ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
MICHALA KAZDA,
on behalf of herself and all others
similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHALA KAZDA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 3:19-cv-02512-WHO<br>Assigned to Hon. William H. Orrick, D2, 17th Fl<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR BENEFITS, DETERMINATION OF RIGHTS AND BREACH OF FIDUCIARY DUTY UNDER ERISA** |

Plaintiff, Michala Kazda ("Plaintiff"), on behalf of herself and all others similarly situated, herein sets forth the allegations of her Complaint against Defendant Aetna Life Insurance Company.

## INTRODUCTION

1. Defendant Aetna Life Insurance Company ("Aetna") is in the business of insuring and/or administering group health plans within the meaning of 29 Code of Federal Regulations § 2560.503-1(m) (both fully insured and self-insured), that are employer-sponsored and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. ("Aetna plans").

2. Plaintiff brings this action to address Aetna's practice of improperly denying claims for surgical treatment of lipedema made by patients under Aetna plans. As set forth below, Aetna denies claims for the surgical treatment of lipedema on the basis they are cosmetic and excluded. Lipedema is a rare condition that is chronic, progressive, painful, and immobilizing. It involves an abnormal buildup of adipose (fat) tissue, usually in the lower body but sometimes in the arms. Often misdiagnosed as obesity or lymphedema, lipedema primarily affects women. Surgical treatment of lipedema is not cosmetic because it treats the symptoms of lipedema, pain and immobility. These are functional problems, not cosmetic ones. Aetna has consistently and erroneously rejected claims for the surgical treatment of lipedema as cosmetic.

## JURISDICTION AND VENUE

3. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves claims by Plaintiff for employee benefits under employee benefit plans regulated and governed by ERISA. Subject matter jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

4. The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each Defendant has minimum contacts with the United States. 29 U.S.C. § 1132(e)(2).

1

5. The claims of Plaintiff and the putative class arise out of policies Defendants issued, administered, and/or implemented in this District. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

## THE PARTIES

6. Plaintiff was at all relevant times covered under an employee benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to health care benefits. Plaintiff resides in Alameda County which is located within this District.

7. Aetna is a corporation with its principal place of business in Hartford, Connecticut. Aetna pays claims, administers and makes benefit determinations related to ERISA health care plans around the country.

## SUBSTANTIVE ALLEGATIONS

### A. Lipedema.

8. Lipedema is a rare condition that is chronic, progressive, painful, and immobilizing. It involves an abnormal buildup of adipose (fat) tissue, usually in the lower body but sometimes in the arms. Often misdiagnosed as obesity or lymphedema, lipedema primarily affects women. Symptoms of lipedema include disproportionately large, column-like legs, and disproportionate hips, stomach or buttocks. As lipedema progresses, patients become increasingly heavy in the lower body and expanding fat cells interfere with the pathways of lymphatic vessels. It is estimated that lipedema affects nearly 11% of the adult female population

9. One of the most common misconceptions about patients with lipedema is that they suffer, instead, from lifestyle- or diet-induced obesity. Although some patients with lipedema may also have obesity and although the obesity may influence the lipedema subcutaneous adipose tissue, lipedema is a mutually exclusive diagnosis and should be considered as such. Unlike obesity, the adipocyte hypertrophy and swelling associated with lipedema are resistant to change with diet and exercise or bariatric surgery and caloric restriction.

10. There are four stages of lipedema: Stage 1 in which there is a normal skin surface with enlarged hypodermal adipose tissue; Stage 2 with indentations of the skin and underlying adipose tissue similar to a mattress containing larger mounds of adipose tissue that grow as non-encapsulated masses, lipomas and angiolipomas; Stage 3 where large extrusions of tissue (skin and adipose tissue) cause gross deformations especially on the thighs and around the knees. Lymphedema, where lymph fluid develops dependently on the feet and hands increasing cranially due to dysfunctional lymphatics, can develop during any stage of lipedema, and is called lipolymphedema or Stage 4 lipedema.

11. As lipedema progresses, it causes pain, mobility problems, joint disorders, and other physical problems that prevent patients from engaging in the activities of daily living.

12. The only effective treatment for the pain and immobility caused by lipedema is a form of surgery called tumescent liposuction. This is different from the techniques used for cosmetic liposuction. During this procedure, a solution is injected into the targeted areas. The solution contains epinephrine to help reduce bleeding, bruising, and swelling and lidocaine as a local anesthetic. The surgeon uses a gentle, vacuum-like instrument to remove excess fat. The removal of this tissue allows patients to gain mobility, reduce or eliminate pain, and lead a productive life.

**B. Aetna's wrongful denial of lipedema surgery claims.**

13. Aetna is a nationwide health insurer that administers the claims of millions of people across the country under Aetna plans.

14. Aetna plans are either fully insured (i.e., funded by Aetna) or self-insured (funded by the employer). Regardless of which entity funds the plan, Aetna acts as the claims administrator. If the plan is self-funded, Aetna will enter into an administrative services agreement with the plan's employer-sponsor to perform critical claims handling functions, including the functions of adjudicating claims and utilization

management.

15. Aetna plans uniformly cover medical expenses "to treat an illness or injury."

16. Aetna's plans further provide surgical benefits to treat illness and injury, including functional problems that result from illness or injury.

17. Aetna plans exclude from coverage those medical services that Aetna considers "cosmetic." Cosmetic services are defined as those services, including surgeries, the purpose of which is to "alter, improve or enhance the shape or appearance of the body whether or not for psychological or emotional reasons[.]"

18. Aetna has developed internal Clinical Policy Bulletins ("CPB"), that is, written directives on coverage positions Aetna takes with respect to certain medical treatments.

19. Aetna's CPB 0031 generally covers the topic of cosmetic surgery. It provides in pertinent part:

> Aetna plans exclude coverage of cosmetic surgery that is not medically necessary, but generally provide coverage when the surgery is needed to improve the functioning of a body part or otherwise medically necessary even if the surgery also improves or changes the appearance of a portion of the body.

20. CPB 0031 further states:

> The following procedures are considered cosmetic in nature:
> ...
> Excision of excessive skin of thigh (thigh lift, thighplasty), leg, hip, buttock, arm (arm lift, brachioplasty), forearm or hand, submental fat pad, or other areas (see CPB 0211- Abdominoplasty, Suction Lipectomy, and Ventral Hernia Repair)

21. Aetna's CPB 0211 provides in pertinent part:

> Aetna considers abdominoplasty, suction lipectomy, or lipoabdomino-plasty cosmetic.

22. Aetna follows the CPBs when deciding claims under Aetna plans.

23. Aetna has followed a consistent practice of denying claims for tumescent liposuction to treat advanced lipedema in arms, legs, and other body parts on the basis the treatment is "cosmetic."

24. Contrary to Aetna's position, tumescent liposuction to treat the symptoms of lipedema is not cosmetic. It is the only effective treatment for the pain and immobility caused by lipedema. It is different from the techniques used for cosmetic liposuction. A solution is injected into the targeted areas. The solution contains epinephrine to help reduce bleeding, bruising, and swelling and lidocaine as a local anesthetic. The surgeon uses a gentle, vacuum-like instrument to remove excess fat. The removal of this tissue allows patients to gain mobility, reduce or eliminate pain, and lead a productive life. Because the surgery addresses these functional problems, by definition, it is not "cosmetic."

    **C. Aetna's denial of Michala Kazda's claim.**

25. At all relevant times, Plaintiff Michala Kazda was covered under an ERISA-regulated, self-insured group health plan issued and administered by Aetna and sponsored by her husband's employer, Ipsos America, Inc.

26. Plaintiff's Aetna plan provides that "the medical benefits plan described in this Booklet is a benefit plan of the Employer." It further provides that "[t]hese benefits are not insured with Aetna or any of its affiliates, but will be paid from the Employer's funds" and that "Aetna and its HMO affiliates will provide certain administrative services under the Aetna medical benefits plan." In connection therewith, Aetna has administered the claims described below.

27. Plaintiff's Aetna plan states that "[t]his Aetna Choice POS II medical plan provides coverage for a wide range of medical expenses for the treatment of illness or injury."

28. Plaintiff's Aetna plan states that covered expenses include charges for surgery:

///

5

**Surgery**
Covered expenses include charges made by a physician for:
- Performing your surgical procedure;
- Pre-operative and post-operative visits; and
- Consultation with another physician to obtain a second opinion prior to the surgery.

29. Plaintiff's Aetna plan further covers "[s]urgery needed to improve a significant functional impariment of a body part."

30. Plaintiff's Aetna plan defines cosmetic services as "[s]ervices or supplies that alter, improve or enhance appearance."

31. Plaintiff was diagnosed with Stage 3 lipedema. Her advanced lipedema has caused her pain, immobility, and other problems.

32. Plaintiff's Aetna plan provides that benefits will be paid "as soon as the necessary proof to support the claim is received. Written proof must be provided for all benefits."

33. In accord with plan requirements, Plaintiff requested in writing that Aetna provide coverage for tumescent liposuction and related procedures to treat her advanced lipedema. Her physicians at Stanford University Medical Center submitted information to Aetna setting forth Plaintiff's diagnosis and the proposed treatment.

34. On April 25, 2018, Aetna sent a letter to Plaintiff denying coverage for the proposed surgery for the following reason:

> We received information about your condition and circumstances. We used the Clinical Policy Bulletin (CPB): Cosmetic Surgery. Based on CPB criteria and the information we have, we are denying coverage for this procedure. This procedure is meant to improve appearance, not to correct a physical problem that affects your daily activities.

35. No other denial bases were advanced by Aetna. Plaintiff appealed this decision.

36. On October 29, 2018, Aetna denied the appeal. Aetna said that it had reviewed the information submitted and "Aetna's Clinical Policy Bulletin (CPB) Number: 0211 Abdominoplasty, Suction Lipectomy, and Ventral Hernia Repair.'"

Aetna stated that it was "upholding the previous decision to deny the request for suction-assisted lipectomy" because "Aetna considers this procedure cosmetic...per the above referenced guidelines." No other denial bases were advanced by Aetna.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of the following class:

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Aetna and whose claims for liposuction treatment of their lipedema were denied as cosmetic.

38. Plaintiff and the class members reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

39. This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because it meets the requirements of Rule 23(a) and Rule 23(b)(1) and (b)(2).

### A.  Numerosity.

40. The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under Aetna plans who have been similarly affected.

### B.  Commonality.

41. Common questions of law and fact exist as to all members of the proposed class.

///

///

///

7

### C. Typicality.

42. The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by Aetna's wrongful conduct.

### D. Adequacy of representation.

43. Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in litigating large and complex class actions, including class actions against health plans such as Aetna.

### E. Superiority of class action.

44. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members.

45. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### F. Rule 23(b) requirements.

46. Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Aetna.

47. Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

48. Aetna has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory

relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**DENIAL OF PLAN BENEFITS AND FOR CLARIFICATION OF RIGHTS UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(1)(B)]**

49. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

50. 29 U.S.C. § 1132(a)(1)(B) entitles Plaintiff to recover benefits due and to enforce and clarify her rights to the benefits at issue.

51. As alleged herein, Plaintiff's Aetna plan covers surgery to treat illness and injury. It also covers surgery to address functional problems resulting from illness and injury.

52. As alleged herein, Aetna has followed a practice of denying claims for tumescent liposuction and related procedures for the treatment of lipedema on the basis the treatment is cosmetic and excluded from coverage. In doing so, Aetna follows the directive in its CPBs that "Aetna considers abdominoplasty, suction lipectomy, or lipoabdomino-plasty cosmetic."

53. Pursuant to its practice, Aetna denied Plaintiff's request for liposuction surgery and related procedures to treat the symptoms of her lipedema on the basis the treatment was cosmetic. Aetna's denial of Plaintiff's claim was erroneous and unreasonable because surgery (tumescent liposuction) to treat an illness (lipedema) is a covered benefit. Aetna's reason for denying the claim, that it is for a cosmetic service, has no application in this setting. Tumescent liposuction is not a cosmetic procedure because it is not performed to make the patient look better. Rather, it addresses various functional problems caused by lipedema: pain, mobility problems, joint disorders, and other debilitating conditions. The surgery remedies these functional problems so, by definition, it is not "cosmetic."

54. Plaintiff has exhausted her administrative remedies, as alleged above.

55. Based on the foregoing, Plaintiff and the class members seek the payment of medical expenses, interest thereon, a clarification of future rights, and attorney fees.

## SECOND CLAIM FOR RELIEF BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(3)]

56. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

57. As alleged herein, Aetna has acted as an ERISA fiduciary due to its role in administering Aetna plans and, specifically, its central role in the tumescent liposuction claim adjudication process. Aetna's creation and implementation of the CPBs was a discretionary act, taken under the authority of and in furtherance of Aetna's claim handling responsibilities, that gave rise to a fiduciary duty.

58. Aetna violated its fiduciary obligations by developing and implementing erroneous CPBs and then relying on those CPBs to systematically deny claims for a needed surgery (tumescent liposuction to treat lipedema) on a class-wide basis.

59. Aetna improperly denied Plaintiff's and the class members' claims for liposuction treatment of her lipedema in beach of its fiduciary duties, as alleged herein.

60. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the class members seek declaratory, equitable and remedial relief as follows:

   a. An order declaring that Aetna's denials of Plaintiff's and the class members' claims for liposuction treatment for advanced lipedema were wrong and improper;

   b. A class-wide injunction requiring Aetna to retract its internal coverage guidelines, or Clinical Policy Bulletins, that erroneously classify tumescent liposuction as a "cosmetic" procedure;

   c. A class-wide injunction requiring Aetna to reform its claims adjudication process so as to adjudicate future claims without the erroneous "cosmetic" denial basis under appropriate and valid medical criteria and to reevaluate and reprocess prior denials without the erroneous "cosmetic" denial basis under appropriate and valid medical criteria;

///

    d. An injunction requiring Aetna to provide notice of the reformation of its claims adjudication process for such claims in the form and manner required by ERISA to all class members;

    e. An accounting of any profits made by Aetna from the monies representing the improperly denied claims and disgorgement of any profits;

    f. Such other equitable and remedial relief as the Court may deem appropriate; and

    g. Attorneys' fees in an amount to be proven.

## REQUEST FOR RELIEF

Wherefore, Plaintiff and the class members pray for judgment against Aetna as follows:

1. Benefits denied in an amount to be proven at trial, including interest;
2. A clarification of rights to future benefits under the plan for all class members;
3. Injunctive and declaratory relief, as described above;
4. An accounting of any profits made and retained through the improper denial of claims and disgorgement of any profits;
5. Attorneys' fees; and
6. Such other equitable and remedial relief as the Court may deem just and proper.

DATED: September 26, 2019       GIANELLI & MORRIS

                  By: /s/ Adrian J. Barrio
                     ROBERT S. GIANELLI
                     JOSHUA S. DAVIS
                     ADRIAN J. BARRIO
                     Attorneys for Plaintiff
                     MICHALA KAZDA