UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHALA KAZDA,<br><br>    Plaintiff,<br><br>    v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 19-cv-02512-WHO<br><br>**ORDER DENYING MOTION TO DISMISS THE FIRST AMENDED COMPLAINT'S SECOND CLAIM OF RELIEF**<br><br>Re: Dkt. No. 35 |

## INTRODUCTION

Aetna Life Insurance Company ("Aetna") denied Michala Kazda insurance coverage for liposuction to treat her advanced lipedema because it found the procedure was "cosmetic" and not medically necessary. Kazda filed suit under the Employee Retirement Income Security Act ("ERISA"), seeking recovery on behalf of herself and others who have had their claims erroneously denied. I previously dismissed her original complaint because she did not sufficiently plead a claim under 29 U.S.C. § 1132 (a)(1)(B) for denial of benefits and under 29 U.S.C. § 1132 (a)(3) for breach of fiduciary duty. *See* Order Granting Motion to Dismiss Without Prejudice ("Order") [Dkt. No. 30]. Now in her First Amended Complaint ("FAC"), Kazda sufficiently pleads that Aetna, as claims administrator, breached its fiduciary duty by implementing internal policy guidelines inconsistent with her plan, and using it to systematically deny insurance claims like hers. The declaratory and injunctive relief she seeks are not duplicative of her Section 1132(a)(1)(B) claim. Aetna's motion to dismiss Kazda's Section 1132(a)(3) claim in the FAC is DENIED.

## BACKGROUND

Kazda is a plan participant in a health benefit plan governed by ERISA, issued and

administered by Aetna, and sponsored by her husband's employer, Ipsos America, Inc. FAC [Dkt. No. 34] ¶¶ 21, 25. Aetna acts as the claims administrator of her plan. *Id.* ¶ 26. She alleges that Aetna health plans generally "provide surgical benefits to treat illness and injury, including functional problems that result from illness or injury." *Id.* ¶ 16. Aetna plans also "exclude from coverage those medical services that Aetna considers 'cosmetic,'" defined as "services, including surgeries, the purpose of which is to 'alter, improve or enhance the shape or appearance of the body whether or not for psychological or emotional reasons[.]'" *Id.* ¶ 17. In particular, she contends that her Aetna health plan covers "[s]urgery needed to improve a significant functional impairment [sic] of a body part." *Id.* ¶ 29. Her plan defines cosmetic services as "[s]ervices or supplies that alter, improve or enhance appearance." *Id.* ¶ 30.

Kazda was diagnosed with Stage 3 lipedema, a condition caused by abnormal buildup of adipose (fat) tissue in the lower body and sometimes in the arms. FAC ¶¶ 2, 31. As lipedema progresses, it causes pain, mobility problems, joint disorders, and other physical problems that prevent patients from engaging in daily activities. *Id.* ¶ 11. She alleges that the "only effective treatment for the pain and immobility caused by lipedema is a form of surgery called tumescent liposuction." *Id.* ¶ 12.

Kazda sought coverage for tumescent liposuction to treat her advanced lipedema, a procedure that removes excess fat tissue to allow patients to gain mobility, reduce or eliminate pain, and lead a productive life. FAC ¶¶ 12, 33. Her medical provider submitted this information to Aetna, setting forth her diagnosis and proposed treatment. *Id.* ¶ 33. On April 25, 2018, Aetna sent her a letter denying coverage for the proposed surgery. *Id.* ¶ 34.

Aetna denied coverage by referring to its Clinical Policy Bulletins ("CPBs"), internal written directives guiding Aetna's coverage positions with respect to certain medical treatments. FAC ¶ 18. Aetna's denial letter states the following:

> We received information about your condition and circumstances. We used the Clinical Policy Bulletin (CPB): Cosmetic Surgery. Based on CPB criteria and the information we have, we are denying coverage for this procedure. This procedure is meant to improve appearance, not to correct a physical problem that affects your daily activities.

*Id.* ¶ 34. The denial letter refers to its CPB 0031 on cosmetic surgery, which provides the

following:
> Aetna plans exclude coverage of cosmetic surgery that is not medically necessary, but generally provide coverage when the surgery is needed to improve the functioning of a body part or otherwise medically necessary even if the surgery also improves or changes the appearance of a portion of the body.

*Id.* ¶ 19. According to Kazda, Aetna has followed a consistent practice of denying claims for tumescent liposuction to treat advanced lipedema on the basis that the treatment is "cosmetic." *Id.* ¶ 23. She contends that tumescent liposuction is medically necessary because the surgery treats symptoms of advanced lipedema, such as pain and mobility problems. *Id.* ¶ 12. The surgery is accordingly not "cosmetic" because it addresses these functional problems. *Id.*

No other denial bases were given in Aetna's initial denial letter, and Kazda appealed this decision. FAC ¶ 35. On October 29, 2018, Aetna denied her appeal by relying on CPB 0211. *Id.* ¶ 36. Under CPB 0211, Aetna considers "abdominoplasty, suction lipectomy, or lipoabdominoplasty" as "cosmetic" procedures. *Id.* ¶ 21. Aetna stated that it was "upholding the previous decision to deny the request for suction-assisted lipectomy" because "[it] considers this procedure cosmetic per the above reference guidelines." *Id.* ¶ 36.

On May 9, 2019, Kazda filed this action against Aetna on behalf of herself and a putative class, alleging that Aetna violated ERISA because it (i) erroneously denied coverage for surgical treatment for lipedema under 29 U.S.C. § 1132 (a)(1)(B) and (ii) breached its fiduciary duty under 29 U.S.C. § 1132 (a)(3). *See* Complaint [Dkt. No. 1]. On September 11, 2019, I granted Aetna's motion to dismiss both claims for failure to state a claim and gave Kazda leave to amend her complaint. *See* Order. On September 26, 2019, she filed her First Amended Complaint, bringing the same claims. Aetna now moves to dismiss her second claim for breach of fiduciary duty under Section 1132(a)(3) for failure to state a claim. *See* Motion to Dismiss First Amended Complaint's Second Claim for Relief ("MTD FAC") [Dkt. No. 35].

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

3

face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

Aetna moves to dismiss Kazda's Section 1132(a)(3) claim on three grounds: (i) Kazda has not pleaded sufficient facts to state a claim; (ii) her claim is duplicative of her Section 1132(a)(1)(B) claim; and (iii) her claim undermines the essential purpose of the ERISA civil enforcement scheme. *See* MTD FAC 2–3. Aetna's third argument has no basis because courts have repeatedly held that allowing plaintiffs to seek relief under both Section 1132(a)(1)(B) and (a)(3) is "consistent with ERISA's intended purpose of protecting participants' and beneficiaries' interests." *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016); *see*

4

*Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996) ("ERISA's basic purposes favor a reading . . . that provides the plaintiffs with a remedy."). Aetna's first and second argument do not warrant dismissal either.

**I.     FAILURE TO STATE A CLAIM**

**A.     Fiduciary Duty as a Claims Administrator**

To establish an action for equitable relief under Section 1132(a)(3), "the defendant must be an ERISA fiduciary acting in its fiduciary capacity" and "must "violate [ ] ERISA-imposed fiduciary obligations." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (internal citations and quotation marks omitted). Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *Alexander v. United Behavioral Health*, No. 14-CV-02346-JCS, 2015 WL 1843830, at *6–7 (N.D. Cal. Apr. 7, 2015) (internal quotations and citations omitted). One such function is the adjudication of claims under a covered plan where the decision to grant or deny a claim involves some exercise of discretion. *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1421–1422 (9th Cir. 1997). The Ninth Circuit has held that claims administrators can be fiduciaries such that Section 1132(a)(3) claims may be brought against them. *Id.*

Aetna concedes that it is a claims administrator. MTD FAC 6; *see* FAC ¶ 14. But it argues that Kazda has not alleged that "Aetna, as claims administrator, had any duties, fiduciary or otherwise, other than to determine benefits in accordance with the terms of the plan." *Id.* Kazda responds that she does not simply describe Aetna's mishandling of her individual benefit claim. Opposition to Motion to Dismiss First Amended Complaint ("Oppo.") [Dkt. No. 37] 4. Rather, her allegations are about "misconduct on the part of [Aetna] that relates to and impacts [her] employee benefit plan as a whole." *Id.* at 5 (internal citation and quotation marks omitted). She alleges that "Aetna violated its fiduciary obligations by developing and implementing erroneous CPBs and then relying on those CPBs to systematically deny claims for a needed surgery (tumescent liposuction to treat lipedema) on a class-wide basis." FAC ¶ 58.

5

Courts have previously held that the creation of internal guidelines by a plan administrator typically involves the exercise of discretion, giving rise to a fiduciary duty. *See Alexander*, 2015 WL 1843830, at *6. In *Alexander*, plaintiffs alleged that United Behavioral Health ("UBH"), as the claims administrator with discretion to adjudicate claims for coverage, promulgated internal guidelines that it used to determine whether a claimant seeking mental illness or substance use disorder out-patient treatment is entitled to coverage. 2015 WL 1843830, at *7. The court found that, based on the case law discussed above, plaintiffs sufficiently showed "at least at the pleading stage of the case, that UBH was acting as a fiduciary when it adopted [the] guidelines and therefore may be liable for a breach of fiduciary duty on the basis of this conduct." *Id.*

Similarly, Kazda sufficiently alleges that Aetna developed "internal coverage guidelines," the CPBs. FAC ¶¶ 18, 60. She describes these CPBs as "written directives on coverage positions Aetna takes with respect to certain medical treatments." *Id.* ¶ 18. She cites to two CPBs in particular, CPB 0031 and CPB 0211, that she claims Aetna relies on to determine whether a procedure is considered "cosmetic" and not entitled to coverage. *Id.* ¶ 19–22. Specifically, she asserts that Aetna relies on these CPBs to consistently deny claims for "tumescent liposuction to treat advanced lipedema in arms, legs, and other body parts on the basis the treatment is 'cosmetic.'" *Id.* ¶ 23.

As I stated in the previous order, "[a] breach of fiduciary duty by enacting CPB guidelines cannot be determined without comparing language from both the underlying plan and the CPB." Order at 7. I previously dismissed Kazda's Section 1132(a)(3) claim because she did not "specifically address how [the CPBs were] inconsistent with her ERISA plan." *Id.* The FAC fixes these deficiencies. She contends that her health plan, identified as a "plan issued and administered by Aetna and sponsored by her husband's employer, Ipsos America, Inc.," covers "[s]urgery needed to improve a significant functional impairment [sic] of a body part." FAC ¶¶ 25, 29. Her plan excludes coverage for cosmetic services, which it defines as "[s]ervices or supplies that alter, improve or enhance appearance." *Id.* ¶¶ 29–30. She contends that Aetna's CPBs are inconsistent with her plan because it does not reasonably interpret the cosmetic exclusion. *Id.* ¶ 24. "Contrary to Aetna's position, tumescent liposuction to treat the symptoms of lipedema is not cosmetic," but

6

rather is "the only effective treatment for the pain and immobility caused by lipedema." *Id.* Kazda's allegations are sufficient to show, at least at the pleading stage, that Aetna was acting as a fiduciary when it adopted the CPBs and therefore may be liable for a breach of fiduciary duty on the basis of its conduct.

**B.     Reply Evidence of CPB 0031 and CPB 0211**

For the first time in its reply, Aetna argues that Kazda "selectively, and misleadingly, paraphrase[es] portions of her plan and Aetna's CPBs." Reply in Support of Motion to Dismiss ("Reply") [Dkt. No. 38] 2. It asserts that the "CPBs upon which [Kazda's] allegations rely flatly disprove any such categorical policy," making her claim "nothing more than a disagreement with Aetna's interpretation and application of the Ipsos plan to her own claim, which is the essence of a simple claim for benefits." *Id.* at 5.[1]

**1.     CPB 0031**

Aetna argues that CPB 0031 lists 29 specific procedures that "are considered cosmetic in nature" but does not include liposuction for treatment of lipedema in that list. Reply 3 (quoting RJN, Ex. A at 1 (hereinafter "CPB 0031")). According to Aetna, this shows that it does not impose a categorical exclusion as Kazda claims it does; to the contrary, the "Background" section of CPB 0031 acknowledges that lipedema is a "painful disorder in women characterized by abnormal deposition of adipose tissue in the lower extremities." CPB 0031 at 8. CPB 0031 notes that diagnosis can be challenging, and treatment consists of various conservative measures, as well as liposuction. *Id.* at 8–9. It also cites numerous studies that recommend a range of progressive treatments, including liposuction at later stages. *Id.* at 9. Aetna contends that lipedema is the only condition that is discussed in CPB 0031 but not expressly listed as an exclusion. Reply 4.

---

[1] Pursuant to the incorporation by reference doctrine, I grant Aetna's request for judicial notice of CPBs 0031 and 0211, as effective in 2018 when Kazda's claim was adjudicated. *See* Aetna Request for Judicial Notice ("RJN") [Dkt. No. 39], Exs. A, B; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019) ("The [incorporation by reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."). Because Kazda did not have an opportunity to respond to Aetna's arguments based on these CPBs in its reply, I allowed her to file a sur-reply. [Dkt. No. 42].

7

Kazda counters that while CPB 0031 does not explicitly list lipedema in its exclusion list, that says nothing about Aetna's coverage practices. Sur-Reply in Support of Opposition to Motion to Dismiss ("Sur-Reply") [Dkt. No. 43] 3. That "the disease of lipedema *itself* is not listed as an exclusion" is not indicative because the service to treat lipedema (tumescent liposuction, which Aetna refers to as suction-assisted lipectomy) is excluded from coverage." *Id.* (emphasis in original).

Kazda points out that CPB 0031 does not show that Aetna processes claims on a case-by-case basis because it states that "suction-assisted lipectomy" for the "trunk" is only "covered for medically necessary breast reconstruction and hyperhidrosis." Sur-Reply 3 (quoting CPB 0031 at 11).[2] CPB 0031 also "explicitly *excludes* coverage for 'suction-assisted lipectomy [in the] upper and lower extremity.'" *Id.* (quoting CPB 0031 at 12). That the "Background" section acknowledges the severity of lipedema and effectiveness of tumescent liposuction treatment shows that Aetna refuses to provide coverage despite knowledge that such procedure is the only effective treatment for lipedema, according to Kazda. *Id.*

### 2. CPB 0211

Aetna argues that CPB 0211, entitled "Abdominoplasty, Suction Lipectomy, and Ventral Hernia Repair," only addresses conditions of the abdomen, trunk, and upper body, and does not address lipedema, which it describes as "a disorder affecting the lower body." Reply 4.

Kazda disagrees with Aetna's description of lipedema. First, she claims that lipedema is not limited to the lower body and can affect the trunk. Sur-Reply at 1; FAC ¶ 8 (describing symptoms of lipedema as creating "disproportionately large, column-like legs, and disproportionate hips, stomach or buttocks"). Second, she argues that Aetna's self-serving interpretation of CPB 0211 "is inconsistent with its specific *application* of CPB 0211 to deny [her] claim for tumescent liposuction to treat her lipedema." Sur-Reply 2; *see* FAC ¶ 36 (quoting Aetna's denial of coverage appeal, where it specifically refers to CPB 0211 for its reasoning). She

---

[2] Kazda also points out that if Aetna really does process claims like hers on a case-by-case basis, then it should be able to produce evidence of approved claims. Sur-Reply 2. Notably, she claims, Aetna has not come forward with even a single instance of an approved coverage for tumescent liposuction to treat lipedema. *Id.*

8

asserts that her situation is not isolated given that ERISA mandates Aetna to treat similarly situated participants the same, which means Aetna is denying other claims like hers too. Sur-Reply 2.

Aetna argues that the CPBs, when read in full, "demonstrate that Aetna does not categorically deny coverage for liposuction for the treatment of lipedema." Reply 5. But the CPBs do not need to explicitly bar tumescent liposuction for lipedema in order for Kazda's Section 1132(a)(3) to go forward. Kazda's allegation that the language in the CPBs is interpreted by Aetna to "systematically deny claims" like hers is enough at the pleading stage. FAC ¶ 58. The CPB documents do not warrant dismissal of her Section 1132(a)(3) claim.[3]

## II. DUPLICITY OF CLAIMS

Section 1132(a)(3) only provides equitable relief where other sections of ERISA do not provide an adequate remedy. *Varity Corp.*, 516 U.S. at 512. The Ninth Circuit has confirmed that plaintiffs may bring simultaneous claims under Sections 1132(a)(1)(B) and 1132(a)(3) so long as they "plead alternate theories of relief without obtaining double recoveries." *Moyle*, 823 F.3d at 961. Aetna argues that Kazda "seeks redress for what is fundamentally the same injury (denial of coverage) and the same remedy (a court order to provide coverage)." MTD FAC 7.

Aetna focuses on three types of equitable relief that Kazda seeks in her FAC: (i) declaratory relief that Aetna's benefits denial was improper (FAC ¶ 60(a)); (ii) injunctive relief requiring Aetna to retract and reform its CPBs and reevaluate prior denials (FAC ¶ 60(b)–(d)); and (iii) an accounting and disgorgement of any profits related to the improperly denied claims (FAC ¶ 60(e)). MTD FAC 7–8.

In my previous order, I held that "Kazda's demand for surcharge . . . is recognized by the Ninth Circuit as equitable relief available under Section 1132(a)(3)." Order at 8 (citing to *Moyle*,

---

[3] Kazda also argues that even if the court finds the CPBs contradict her allegations, dismissal on that basis would be procedurally improper because: (i) Aetna waived its argument by not bringing it in its moving papers and only in its reply; (ii) dismissal on the basis of the CPBs would "exceed [the court's] limited fact-finding power at the pleading stage; and (iii) "Aetna's reliance on the CPBs at the pleading stage to conclusively define the nature and scope of the its coverage practices while simultaneously denying discovery on class certification issues is improper." Sur-Reply 4. Given that I deny Aetna's motion, these arguments need not be addressed.

823 F.3d at 960). Kazda seeks the same form of relief in Paragraph 60(e) of her FAC, and therefore has pleaded a distinct remedy as to that form of relief.

The FAC also pleads distinct remedies for declaratory and injunctive relief given that Kazda has better explained the theory behind her Section 1132(a)(3) claim. Her forms of relief mirror the relief sought in *Wit v. United Behavioral Health*, where the court found them distinct from Section 1132(a)(1)(B) claims. No. 14-CV-02346-JCS, 2014 WL 6626894, at *10 (N.D. Cal. Nov. 20, 2014). The *Wit* court also "highlighted the difficulty of determining at the pleading stage of the case whether claims under (a)(1)(B) and (a)(3) are, in fact, duplicative." *Id.*

### A. Declaratory Relief

In the FAC, Kazda seeks "[a]n order declaring that Aetna's denials of Plaintiff's and the class members' claims for liposuction treatment for advanced lipedema were wrong and improper." FAC ¶ 60(a). Aetna argues that this amounts to "only a declaration of the Court's findings with respect to her claim for benefits." MTD FAC 8. It contends that this form of relief "is entirely dependent upon, and thus duplicative of, her Benefits Claim." *Id.*

Kazda responds that the declaratory relief she seeks under Section 1132(a)(3) is distinct from the declaratory relief available under Section 1132(a)(1)(B). Oppo. 9. She notes that Section 1132(a)(1)(B) limits declaratory relief to an order "clarify[ing] the rights to *future* benefits," whereas the declaratory relief she seeks under Section 1132(a)(3) is "broader and encompasses Aetna's prior, still-unremedied denials of Plaintiffs' and the class members' claims for liposuction treatment for advanced lipedema." *Id.* (citing to FAC ¶ 60(a)). She seeks declaratory relief that Aetna's denials based on the CPBs were improper.

The plaintiff in *Wit v. United Behavioral Health*, similarly sought "declaration that [United Behavioral Health's] denials of residential treatment coverage were improper." 2014 WL 6626894, at *10. The court relied on another case, *Hill v. Blue Cross and Blue Shield of Michigan*, where the Sixth Circuit reversed the district court's dismissal of a claim under Section 1132(a)(3) in a class action in which "the plaintiffs alleged both that they had been improperly denied benefits *and* that the plan administrator was using an improper methodology in adjudicating claims." *Id.* (citing *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717–18

(6th Cir. 2005)). I agree with those decisions. Kazda has sufficiently pleaded a distinct declaratory remedy under Section 1132(a)(3).

### B. Injunctive Relief

Kazda seeks three forms of injunctive relief. She seeks an injunction requiring Aetna to: (i) "retract its internal coverage guidelines"; (ii) "reform its claims adjudication process so as to adjudicate future claims without the erroneous 'cosmetic' denial basis'"; and (iii) "reevaluate and reprocess prior denials without the erroneous 'cosmetic' denial basis.'" FAC ¶¶ 60(b)–(d). Aetna argues that Kazda essentially seeks the same remedy provided to her under Section 1132(a)(1)(B): "to enjoin a denial of benefits and require a reprocessing of claims." MTD FAC 8.

Like the plaintiffs in *Wit*, Kazda has sufficiently pleaded a distinct remedy for injunctive relief. Kazda seeks an injunction "requiring Aetna to retract its internal coverage guidelines," just as the *Wit* plaintiffs sought an injunction "ordering UBH to stop utilizing the guidelines." FAC ¶ 60(b); *Wit*, 2014 WL 6626894, at *10. Kazda seeks an injunction "requiring Aetna to reform its claims adjudication process," just as the *Wit* plaintiffs sought an injunction requiring UBH to "adopt or develop guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law." FAC ¶ 60(c); *Wit*, 2014 WL 6626894, at *10. Kazda seeks an injunction "requiring Aetna to provide notice of the reformation," and "reevaluate and reprocess prior denials," just as the *Wit* plaintiffs sought injunction requiring UBH to "reprocess claims for residential treatment that it previously denied." FAC ¶¶ 60(c), (d); *Wit*, 2014 WL 6626894, at *10. The relief Kazda seeks under Section 1132(a)(3) has been recognized as not being duplicative, at least at the pleading stage.

## CONCLUSION

Aetna's motion to dismiss the Section 1132(a)(3) claim is DENIED.

**IT IS SO ORDERED.** Dated:

December 10, 2019

William H. Orrick
United States District Judge

11