UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHALA KAZDA,<br><br>    Plaintiff,<br><br>    v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 19-cv-02512-WHO<br><br>**ORDER GRANTING CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 80, 81, 84, 89, 90 |

Plaintiff Michala Kazda seeks certification of a class of people covered by Employee Retirement Income Security Act ("ERISA") health plans administered by defendant Aetna Life Insurance Company ("Aetna") whose claims for liposuction treatment of their lipedema were denied as cosmetic. Her motion is GRANTED. Kazda has standing to seek declaratory and injunctive relief requiring Aetna to reprocess the class members' previously denied claims and notify them of its policy change. Her claims are typical. She is an adequate representative. She has also sufficiently alleged questions common to the class—namely, whether Aetna had a policy or practice of denying these claims as cosmetic—that will drive the resolution of this matter. And although the class is small, given the circumstances of this case, certification is appropriate. Certification is also appropriate under Rule 23(b)(1)(A), as separate suits would risk establishing incompatible standards of conduct for Aetna, and Rule 23(b)(2), as the relief sought is appropriate for the class as a whole.

## BACKGROUND

Kazda suffers from advanced lipedema, a rare condition that involves an abnormal buildup of fat tissue, typically in the lower body. Mot. for Class Certification ("Mot.") [Dkt. No. 80] 1:21-23, 2:17-19. People with lipedema experience symptoms including "disproportionately large,

column-like legs, and disproportionate hips, stomach[es] or buttocks." *Id*. at 2:19-21.  As lipedema progresses, patients become "increasingly heavy in the lower body," causing "pain, mobility problems, joint disorders, and other physical problems that prevent patients from engaging in the activities of daily living." *Id*. at 2:21, 3:11-13.

A surgery called "tumescent liposuction" or "suction lipectomy" is the "only effective treatment for the pain and immobility caused by lipedema." *Id*. at 3:14-15.  During the procedure, a surgeon uses a vacuum-like instrument to remove excess fat tissue from the patient.  *Id*. at 3:18-19.  Doing so "allows patients to gain mobility, reduce or eliminate pain, and lead a productive life." *Id*. at 3:20-21.

Aetna health plans include a general exclusion for "cosmetic services and plastic surgery," described as "[a]ny treatment, surgery (cosmetic or plastic), service or supply to alter, improve or enhance the shape or appearance of the body." *Id*. at 3:24-27 (citing in part Ex. 1 at 8, Ex. 7 at 71-2 to 72).  The plans separately define "cosmetic" as "[s]ervices, drugs or supplies that are primarily intended to alter, improve or enhance your appearance." *Id*. at 3:27-4:1 (citing in part Ex. 1 at 9).

Aetna also uses what are known as Clinical Policy Bulletins ("CPBs"), which are "extra-contractual written directives on coverage positions Aetna takes with respect to commonly encountered treatments." *Id*. at 4:3-5.  CPBs are published online so members know about Aetna's coverage positions.  *Id*. at 4:6-7.  They are also provided to Aetna's medical directors, who use them in making coverage decisions.  *Id*. at 4:7-8.

Two CPBs are relevant to lipedema and the matter at hand.  As published in 2015 and effective through April 2020, CPB 0211 (titled "Abdominoplasty, Suction Lipectomy, and Ventral Hernia Repair") stated that "Aetna considers abdominoplasty, suction lipectomy, or lipoabdominoplasty cosmetic." *Id*. at 4:23-25 (citing Ex. 11 at 220).  It did not list any exceptions.  *See id*.  CPB 0031 ("Cosmetic Surgery") includes the following language:

> Aetna plans exclude coverage of cosmetic surgery that is not medically necessary, but generally provide coverage when the surgery is needed to improve the functioning of a body part or otherwise medically necessary even if the surgery also improves or changes the appearance of a portion of the body.

2

> This policy statement supplements plan coverage language by identifying procedures that Aetna considers medically necessary despite cosmetic aspects, and other cosmetic procedures that Aetna considers not medically necessary. Please note that, while this policy statement addresses many common procedures, it does not address all procedures that might be considered to be cosmetic surgery excluded from coverage.

*Id*. at 4:11-17 (citing in part Ex. 10 at 207). CPB 0031 then lists procedures that are "considered medically necessary when criteria are met," including "lipectomy or liposuction and autologous fat grafting," but only for breast reconstruction. *Id*., Ex. 10 at 208-09.

Kazda was covered under an Aetna health insurance plan through her husband's employer, the benefits of which were self-insured by the employer. *Id*. at 8:10-12. After Kazda was diagnosed with Stage 3 lipedema, she requested in writing that Aetna provide coverage for tumescent liposuction and related procedures. *Id*. at 8:18-21. Aetna denied the request in a letter dated April 25, 2018, which read in part:

> We reviewed information received about your condition and circumstances. We used the Clinical Policy Bulletin (CPB): Cosmetic Surgery. Based on CPB criteria and the information we have, we are denying coverage for this procedure. This procedure is meant to improve appearance, not to correct a physical problem that affects your daily activities.

*Id*. at 8:23-27 (citing Ex. 2). Internal notes showed that Aetna relied on CPB 0031 and CPB 0211 in denying Kazda's claim because "Aetna considers suction lipectomy cosmetic." *Id*. at 9:1-4 (citing in part Ex. 60).

Kazda appealed Aetna's decision through her surgeon. *Id*. at 9:5-6. Aetna denied the appeal in a letter dated June 5, 2018, which stated in part:

> The basis for this determination is Aetna considers suction lipectomy cosmetic. Therefore the denial remains upheld. This decision was made utilizing Aetna's Clinical Policy Bulletins, Abdominoplasty, Suction Lipectomy, and Ventral Hernia Repair and Aetna's Clinical Policy Bulletin: Cosmetic Surgery.

*Id*. at 9:6-17 (citing Ex. 63).

Kazda appealed again via a phone call on October 24, 2018. *Id*. at 9:18-19. In a letter dated five days later, Aetna denied the additional appeal. *Id*. at 9:19-20. It read:

> We are upholding the previous decision to deny the request for coverage of suction-assisted lipectomy of the right hip and leg. The reason for this determination is

>coverage for medical necessity is not met. Aetna considers this procedure cosmetic for this location.

*Id*. at 9:21-24 (citing Ex. 5).

Kazda filed this class action lawsuit against Aetna on May 9, 2019, alleging that it improperly denied claims for surgical treatment of lipedema as cosmetic. Dkt. No. 1. She brought two claims under ERISA, denial of plan benefits and breach of fiduciary duty, and sought in part a clarification of rights and injunctive relief. *See id*. at 7-8 (asserting claims under 29 U.S.C. § 1132(a)(1)(B) and (a)(3)). After I granted Aetna's motion to dismiss without prejudice, Kazda filed an amended complaint bringing the same claims. Dkt. No. 34.

After Kazda brought suit, Aetna revised CPB 0211. Mot. at 8:3-5. The new CPB 0211, published on August 28, 2020, specifically mentions lipedema. *Id*. at 8:5-7 (citing in part Ex. 57 at 613). It states:

>Aetna considers water-assisted liposuction medically necessary in persons with pain and disability from lipedema who have failed to respond to three or more months of conservative management (compression or manual therapy) and who meet the following diagnostic criteria for lipedema.

*Id*., Ex. 57 at 613. It then lists criteria including medical history and physical examination findings. *Id*. at 613-14. The revised CPB 0211 also specifies that "Aetna considers suction lipectomy cosmetic for indications other than lipedema." *Id*. at 614. According to Kazda, Aetna has not notified putative class members of the change or reprocessed their previously denied claims. Mot. at 8:7-8.

Kazda filed this motion for class certification on December 7, 2021. Dkt. No. 80.

**LEGAL STANDARD**

**I.    STANDING**

The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, among other things, that plaintiffs have standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must demonstrate that she has "suffered a concrete and particularized injury that is either actual or imminent" (an injury-in-fact), that "the injury is fairly traceable to the defendant" (causation), and that "it is likely that a favorable decision will redress that injury" (redressability). *See Massachusetts v.*

4

*EPA*, 549 U.S. 497, 517 (2007).  Standing is an issue distinct from the merits of a claim, and therefore "does not require analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  Although the jurisdictional issue of standing "can be raised at any time," it is determined as of the commencement of a suit. *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009); *Lujan*, 504 U.S. at 570 n.5.

"In a class action, this standing inquiry focuses on the class representatives." *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019).  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citations omitted).

## II.   FEDERAL RULE OF CIVIL PROCEDURE 23

Federal Rule of Civil Procedure 23 governs class actions.  "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (Dec. 14, 2001).  The burden is on the party seeking certification to show that these prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Certification under Rule 23 is a two-step process. *See* Fed R. Civ. P. 23.  The party seeking certification must first satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  Specifically, Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of those of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking certification must then establish one of three grounds set forth in Rule

23(b). Kazda seeks certification under Rule 23(b)(1) and 23(b)(2). Mot. at 10:8-9.

A class action may proceed under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not party to individual adjudications or would substantially impair or impede their ability to protect their interests."

Fed. R. Civ. P. 23(b)(1).

A class may also proceed under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In considering class certification, the court accepts as true the complaint's substantive allegations, but "need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action." *Hanni v. Am. Airlines*, No. C-08-00732-CW, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010). The court may also "consider supplemental evidentiary submissions of the parties." *Id*. The court's "rigorous" class-certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *See Dukes*, 564 U.S. at 351. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*.

## DISCUSSION

### I. MOTION FOR CLASS CERTIFICATION

Kazda seeks certification of the following class: "All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Aetna and whose claims for liposuction treatment of their lipedema were denied as cosmetic." Mot. at 9:26-28.

### A. RULE 23(A)

#### 1. Typicality and Adequacy

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *see also* Fed. R. Civ. P. 23(a)(3). Kazda's claims and defenses are typical of the class because they have suffered the same or similar injury (their claims for liposuction treatment for their lipedema were denied as cosmetic) that arise from the same alleged course of conduct (Aetna's policy or practice of excluding such claims as cosmetic).

To determine adequacy, courts evaluate whether the named plaintiffs and their counsel "have any conflicts of interest with other class members" and whether they will "prosecute the action vigorously on behalf of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). There is no indication of any conflicts of interest, nor that Kazda and her counsel—who has experience with insurance and class action litigation—will not prosecute this action vigorously. *See* Mot. at 18:18-21.

Aetna argues that Kazda is an inadequate and atypical class representative because she lacks standing to pursue injunctive relief. *See* Oppo. [Dkt. No. 85] 13:24-16:22. It contends that Kazda cannot show: (1) that she is threatened by a repetition of the injury alleged (denial of her claim under Aetna's former policy) or (2) that she would qualify for the coverage she now seeks on behalf of the class (under Aetna's new policy). *See id*.

It is helpful to clarify the type of injunctive relief that Kazda pursues. The amended complaint sought three injunctions: one requiring Aetna to "retract its internal coverage guidelines, or Clinical Policy Bulletins, that erroneously classify tumescent liposuction as a 'cosmetic' procedure"; another requiring Aetna to "reform its claims adjudication process so as to adjudicate future claims without the erroneous 'cosmetic' denial basis under appropriate and valid medical criteria and to reevaluate and reprocess prior denials without the erroneous 'cosmetic' denial basis under appropriate and valid medical criteria"; and a third requiring Aetna to "provide notice of the reformation of its claims adjudication process for such claims in the form and manner

required by ERISA to all class members." *See* First Am. Compl. ("FAC") [Dkt. No. 34] ¶ 60.

Aetna's revision of CPB 0211 to include an exception for lipedema surgery appears to have rendered the first injunction (requiring Aetna to retract its CPBs) and the first half of the second injunction (requiring Aetna to reform its adjudication process) unnecessary. *See id.* Kazda acknowledges that Aetna revised CPB 0211, and does not allege that it is ignoring the new version in adjudicating new claims for lipedema surgery. *See generally* Mot. In her motion for class certification, she describes the injunction sought as an "order that Aetna reprocess these previously denied requests under appropriate medical necessity criteria." *Id.* at 2:1-3; *see also* Reply [Dkt. No. 87] 11:27-12:1 (asserting that she has "standing to seek injunctive relief requiring Aetna to notify class members its coverage position has changed and to properly re-review her claim for lipedema surgery (and that of the putative class members)."). In other words, the injunctive relief that Kazda now seeks is retrospective. *See Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 507-11 (N.D. Cal. 2017) (distinguishing between a retrospective "reprocessing injunction" and a prospective injunction requiring the defendants to stop using the challenged guidelines).

Aetna is correct that, to the extent that Kazda still sought prospective relief, she has not sufficiently shown a sufficient likelihood that she will again be wronged in a similar way. When a plaintiff seeks prospective injunctive relief, she must demonstrate that she has suffered or is threatened with a concrete and particularized harm and there is a "sufficient likelihood" that she "will again be wronged in a similar way." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Kazda has not done this, particularly since Aetna revised CPB 0211.

Kazda does, however, have standing to pursue the injunction for reprocessing (and notice) because it functions as a form of retrospective relief and because the harm that existed at the time Kazda filed suit (the denial of her claim) persists today.

*Des Roches* is instructive. The Hon. Lucy H. Koh held in that case that the plaintiffs lacked standing to pursue prospective relief, as they had not demonstrated a sufficient likelihood that the defendants would return to old guidelines in the future. *See* 320 F.R.D. at 511. There too the defendants had revised the guidelines at issue after the suit was filed. *See id.* at 495, 510. But

8

1  the court found that the reprocessing injunction—requiring the defendants to reprocess denied
2  claims—an appropriate basis for class certification under Rule 23(b)(2). *Id*. at 508-09. The
3  retrospective injunction posed no issue in terms of standing.

4  Moreover, the Ninth Circuit has expressly held that reprocessing is the usual remedy in
5  these types of cases. In *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability*
6  *Income Plan*, 85 F.3d 455, 456 (9th Cir. 1996), the court held that when an "administrator
7  construes a plan provision erroneously, the court should not itself decide whether benefits should
8  be awarded." Instead, it "should remand to the administrator for it to make that decision under the
9  plan, properly construed." *Saffle*, 85 F.3d at 456. Relying on *Saffle*, courts within this circuit have
10 held that reprocessing injunctions warrant class certification under Rule 23(b)(2). *See, e.g., Des*
11 *Roches*, 320 F.R.D. at 508; *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV-12-
12 00604, 2013 WL 12119569, at *13 (C.D. Cal. April 29, 2013). In addition to relying on *Saffle* for
13 certification under Rule 23(b)(2), the *Ballas* court noted that "[m]andating reevaluation by
14 Anthem of class members' claims would be a form of relief [the plaintiff] has standing to pursue."
15 *Id*. at n.62. Kazda too has standing to pursue this form of relief.

16 This does not require Kazda to show that her claim would in fact be covered under the new
17 guidelines. As the Ninth Circuit said in *Saffle*: "the court should not itself decide whether benefits
18 should be awarded." 85 F.3d at 456.

19 In sum, Kazda has sufficiently shown that she has standing to seek an injunction requiring
20 that Aetna reprocess the denied claims at issue and provide notice to affected class members. She
21 has otherwise satisfied typicality and adequacy under Rule 23(a)(2).

22 **2. Commonality**

23 Rule 23(a)(2) also requires "questions of law or fact common to the class." Fed. R. Civ. P.
24 23(a)(2). A plaintiff must show that the class members suffered the same injury, meaning their
25 claims "depend upon a common contention" that is of such a nature that "determination of its truth
26 or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *See*
27 *Dukes*, 564 U.S. at 349-50. The plaintiff must demonstrate not merely the existence of a common
28 question, but "the capacity of a class-wide proceeding to generate common answers apt to drive

9

the resolution of the litigation." *Id*. at 350 (citation omitted). To satisfy Rule 23(a)(2), "even a single common question will do." *Id*. at 359.

According to Kazda, common issues include "whether Aetna's coverage position prior to August 2020"—that is, "denying requests for Lipedema Surgery as 'cosmetic'"—was incorrect, and "whether it should be required to give notice and reprocess all previously denied lipedema surgery requests using appropriate medical necessity coverage." Mot. at 12:26, 13:20-22.

Aetna first argues that it "never had a uniform policy, formal or informal, of denying claims for lipedema surgery on a categorical basis." Oppo. at 18:2-3. In support, it offers the declaration of Robert McDonough, Aetna's senior director of clinical policy research and development, who stated that neither CPB 0211 nor CPB 0031 "specifically addressed lipedema or lipedema surgery and neither precluded coverage for lipedema surgery where medically necessary." *Id*. (citing McDonough Decl. at 6).[1] Aetna also points to the language of the two CPBs, which "never even mentioned the word 'lipedema' at all until March 2019.'" *Id*. at 18:3-5 (citing in part Exs. H, I).

True, CPBs 0031 and 0211 did not expressly include the word "lipedema" (at least, before 0211 was revised). But they do mention suction lipectomy and declare the procedure cosmetic. *See* Oppo., McDonough Decl., Ex. H (listing suction lipectomy as "cosmetic in nature"), Ex. I (stating that "Aetna considers . . . suction lipectomy . . . cosmetic"). CPB 0031 states only one

---

[1] Kazda objects to McDonough's declaration and argues that I should disregard it. *See* Dkt. No. 88. The objection is overruled. To start, Civil Local Rule 7-3(c) requires that any evidentiary objections to the opposition be included within the reply brief or memorandum. Civil Local Rule 7-3(c). Moreover, the Ninth Circuit has recognized that "[n]umerous district courts in this circuit have long concluded that it is appropriate to consider evidence at the class certification stage that may ultimately be inadmissible." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 n.2 (9th Cir. 2018).

Kazda also objects to Aetna's response to her objection, Aetna's response to a declaration that Kazda attached to her reply, and Aetna's supplemental declaration in support of its opposition. *See* Dkt. Nos. 91, 92, 94. Although Local Rule 7-3(d)(1) permits Aetna to file an objection to new evidence submitted in the reply, the rest of the filings, including Kazda's objection, were improper. The Local Rules require that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." Civil Local Rule 7-3(d). The parties did not seek, let alone obtain, my approval before these filings. Although these materials did not factor into my analysis, the parties are directed to review the Northern District of California's Civil Local Rules to ensure compliance moving forward.

exception for lipectomy or liposuction "considered medically necessary when criteria are met:" breast reduction. *See id*., Ex. H. It also clarifies that "while this policy statement addresses many common procedures, it does not address all procedures that might be considered to be cosmetic surgery excluded from coverage." *Id*. Per this language, the list of procedures was not exhaustive. Whether lipedema was specifically mentioned is therefore not dispositive.

Aetna next argues that it had no categorical policy for determining claims for lipedema surgery because it "assessed each claim individually and based upon the member's clinical information." Oppo. at 18:20-21. In support, it points to the approval of approximately one-third of the claims it received for lipedema surgery between January 2015 and August 2020. *Id*. at 18:18-20 (citing McDonough Decl. at 13). In the "vast majority of cases" where it did deny claims, Aetna contends, it did so after requesting additional information or a conference with the medical provider. *Id*. at 18:22-25.

This is also not persuasive, as courts within this circuit have recently rejected arguments that approval of insurance claims defeats commonality. *See Des Roches*, 320 F.R.D. at 499 ("the proposed class consists only of patients whose claims were *denied*") (emphasis in original); *see also Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143 (C.D. Cal. 2021). In *Hendricks*, the court held that even though Aetna had approved a lumbar surgery in some instances, the plaintiffs had presented evidence showing that it was the company's policy to deny coverage for the surgery because it was "experimental or investigational," satisfying commonality. 339 F.R.D. at 148-49. Aetna's policy descriptions stated that it did not generally cover "experimental or investigational" devices or procedures" and a CPB articulated that it considered the surgery "experimental or investigational." *Id*. at 149. Moreover, the court held, Aetna denied the plaintiffs' requests for the surgery "solely on the ground" that it was "experimental or investigational." *Id*.

Similar to *Hendricks*, Kazda has sufficiently shown, at least for the purposes of class certification, that Aetna considered suction lipectomy a cosmetic procedure and denied class members' claims on those grounds. CPB 0031 and 0211 expressly state this. Aetna cited these CPBs when denying Kazda's claim, as well as those of other class members. This evidence undermines Aetna's argument that it had no categorical or uniform policy denying claims for

11

lipedema surgery as cosmetic. Whether Aetna in fact had such a policy or practice is a common question that, answered one way or another, will drive the resolution of the litigation.

This case also differs from *Condry v. UnitedHealth Grp., Inc.*, No. 17-CV-00183-VC, 2019 WL 7050114, at *3 (Dec. 23, 2019), where the court had the benefit of a more robust evidentiary record—submitted on two rounds of class certification briefing as well as cross-motions for summary judgment—in deciding that the evidence did not demonstrate that an insurance company applied a uniform standard or approach to the claims at issue. Given the posture of this case (only the briefing on class certification, where "free-ranging merits inquiries" are inappropriate), Kazda has shown enough with regard to Aetna's policies and practices to satisfy commonality. *See Amgen*, 568 U.S. at 466.

### 3. Numerosity

Finally, Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is a case-specific inquiry; there is "no magic number required." *See Crosby v. Cal. Physicians' Serv.*, 498 F. Supp. 3d 1218, 1229 (C.D. Cal. 2020); *see also In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity."). "As a general matter, however, courts have found that classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Crosby*, 498 F. Supp. 3d at 1229 (quotation marks and citations omitted).

When the proposed class is "not very numerous," courts consider factors including the geographic diversity of class members, the ability of individual claimants to bring separate suits, and whether injunctive or declaratory relief is sought in determining whether joinder is impracticable and a class proceeding preferred. *See Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015). When plaintiffs seek injunctive and declaratory relief, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of the proposed subclass is sufficient to make joinder impracticable." *Nightengale v. U.S. Citizenship & Immigr.*

12

*Serv.*, 333 F.R.D. 449, 457 (N.D. Cal. 2019) (citation omitted).

The parties dispute the size of the class. According to Kazda, it stands at "at least" 25 people, based on information provided by Aetna. Mot. at 10:18-21. She specifically cites a denial spreadsheet, showing 30 members whose lipedema surgery requests were denied as cosmetic (25 of whom had ERISA plans), as well as testimony from McDonough authenticating the spreadsheet. *See* Reply at 2:6-13 (citing Mot., Ex. 7 at 116-119; Ex. 15).

Aetna offers several numbers, none of which are 25. *See* Oppo. at 22:15-20. It begins with 31 denied claims, which it reduces to 18 after eliminating "claims where a lipedema diagnosis was only questionable." *See id*. at 22:15-20 n.21. Of those 18, Aetna argues that five are no longer Aetna members (and thus lack standing for prospective injunctive relief) and two were covered under non-ERISA plans (and thus would not be part of the proposed class). *Id*. at 22:17-20. Using this math, Aetna arrives at a putative class of "only 11 members." *Id*. at 22:20. Aetna relies on another declaration from McDonough in arriving at these numbers. *See id*. at 22:15-20 (citing McDonough Decl. at 14). And even considering the claims with a "questionable" lipedema diagnosis, Aetna argues that the class still falls short. *See id*. at 22:20 n.21. Of those 31 denied claims, Aetna contends that six involved non-ERISA plans and 10 more involved claimants who are no longer covered by Aetna, leaving a class of 15 members. *See id*.

A closer look at the claims excluded for "questionable" lipedema diagnoses shows that in many, a lipedema diagnosis was clearly mentioned.[2] Claim 2C states that "this request is for a suction lipectomy for lipedema," and that it was denied as cosmetic under CPB 0031 and 0211. *See* Oppo., Ex. T-2C at 2905. Claim 3C lists lipedema under "pertinent past medical history/comorbidities" and cites CPB 0211 in denying the request for coverage of suction assisted lipectomy *See id*, Ex. T-3C at 2602-03. Claim 8C explicitly lists the claimant's "diagnosis of lipedema" and cites CPB 0031. *See id.*, Ex. T-8C at 3808-09. In all, lipedema is mentioned in 10

---

[2] McDonough identified the denied cases "where lipedema cannot be confirmed" as: 2C, 3C, 8C, 10C, 16C, 17C, 1F, 2F, 3F, 4F, 8F, 9F, and 10F. *See* Oppo., McDonough Decl. at 14. The referenced files are covered by one of the motions to seal granted later in this Order. I will describe them here in order to address the numerosity argument, and because the information cited does not reveal specific identifying information about any individual.

United States District Court
Northern District of California

of the 13 cases that Aetna excluded. *See id*, Ex. T-10C at 2967 ("referred from [redacted] office for liposuction evaluation for early stage lipedema"); Ex. T-1F at 3918 (describing claimant as having "lipedema and lymphedema"); Ex. T-2F at 3315 ("Patient presents today for consultation of lipedema . . . was recently diagnosed in June with this condition."); Ex. T-3F at 3556 ("DX: LIPEDEMA"); Ex. T-4F at 3020 ("referred for liposuction for evaluation to treat lipidema [sic]"); Ex. T-8F at 2667 ("dx of lipedema, stage 1"); Ex. T-9F at 3255 ("dx of 'lipedema'"). Another claim, 10F, states that the claimant was treated for "lipo-lymphaedema [sic]", which Kazda contends is considered "stage 4 lipedema." *See id.*, Ex. T-10F at 3360; *see also* FAC at ¶ 10. Because it is unclear how the lipedema diagnoses in these 11 claims were questionable, I will include them in my count of potential class members, bringing Aetna's number up to 29 claims.

Of those 29 claims, Aetna contends that six include non-ERISA plans that would not be covered by the class: 3C, 9C, 10C, 11C, 4F, and 9F. *See* Oppo. at 22 n.21. That brings the class size down to 23. Aetna's argument that 10 other claimants should be excluded because they are no longer Aetna members is not persuasive. Aetna focuses solely on whether "*former* plan members lack standing for *prospective* relief." *See* Oppo. at 22 n.20 (emphasis in original). But, as explained above, Kazda seeks retrospective relief on behalf of the class: a reprocessing of the previously denied claims. Aetna cites no authority in arguing that former Aetna members lack standing for retrospective relief. *See id*.

The bottom line is this: the class size appears to be either 25 members (using Kazda's number) or 23 (using Aetna's, with some adjustments). This is smaller than what one might imagine when thinking of class action litigation. But given the particular circumstances of this case, numerosity is satisfied. Kazda seeks declaratory and injunctive relief, triggering the more relaxed standard. While joinder of 23 to 25 people might not be impossible, it would be impracticable, given the likely geographic diversity of class members covered by a nationwide insurance provider. And, as in *Escalante* (where a 19-member class was approved), certification "would be in the interests of judicial economy." *See* 309 F.R.D. at 618. Kazda seeks declaratory relief and an injunction requiring Aetna to provide class members notice of the changes to its claims adjudication process and to reprocess their previously denied claims. Resolving these

14

issues on a class-wide basis would spare other courts the time and resources of having to decide them. Given the strain on our federal court system, the opportunity to avoid duplicative suits—even 23 to 25 of them—is welcomed.

For all of these reasons, Kazda has met the requirements of Rule 23(a) by showing numerosity, commonality, typicality, and adequacy. The first step in class certification is fulfilled.

### B.  RULE 23(B)

Now to the second step: Rule 23(b).

Rule 23(b)(1)(A) allows class certification if "prosecuting separate actions by or against individual class members would create risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). "The phrase 'incompatible standards of conduct' refers to the situation where 'different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct.'" *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (citation omitted).

Although much of the analysis above focused on the nature of the injunctive relief that Kazda seeks, her FAC also includes a request for an order declaring that Aetna's denials of her and the class members' claims "were wrong and improper." FAC at ¶ 60. And the reprocessing injunction requested includes an order that Aetna reevaluate the previously denied claims "under appropriate and valid medical criteria." *Id*.

As Kazda notes, there is a "very real risk that different courts might order divergent or even conflicting relief." Mot. at 19:17. The *Des Roches* court articulated the same concern: without a class action, there was "a risk that in issuing individual injunctions, different courts would come to different conclusions about what generally accepted standards require." 320 F.R.D. at 507. The risk is that different courts might come to different conclusions about whether Aetna's denial of claims was in fact "wrong and improper" as well as what "appropriate and valid medical criteria" entails. This could "establish incompatible standards of conduct," impairing Aetna's ability to act uniformly moving forward. *See* Fed. R. Civ. P. 23(b)(1)(A). Certification is therefore appropriate under Rule 23(b)(1).

15

1       It is also appropriate under Rule 23(b)(2).[3] A class may proceed under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The focus in a Rule 23(b)(2) class "is not on the claims of the individual class members, but rather whether [the defendant] has engaged in a common policy." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015).

Kazda has sufficiently alleged, at this point, that Aetna had a policy and practice of denying claims for lipedema surgery as cosmetic, as explained above. And courts have recognized that class certification is appropriate under Rule 23(b)(2) when the plaintiff seeks a reprocessing injunction, as Kazda does. *See, e.g., Des Roches*, 320 F.R.D. at 508-09 (collecting cases). This is true of one of the cases that Aetna cites in opposing certification under Rule 23(b)(1), *Ballas*. *See* Oppo. at 24:21-25:9. Although the *Ballas* court denied certification under Rule 23(b)(1), it held that certification was appropriate under Rule 23(b)(2) because the plaintiffs "seeks an injunction that would deliver the same relief to every class member": one directing the insurance company to reevaluate previously denied claims. 2013 WL 12119569, at *12-14. The same is true here. Certification is therefore also permitted under Rule 23(b)(2).

Having met the requirements set forth in Rule 23, Kazda's motion for class certification is GRANTED.

## II.     MOTIONS TO SEAL

The parties filed four motions to seal in connection with the motion for class certification. *See* Dkt. Nos. 81, 84, 89, 90.

A party seeking to seal court records must overcome a strong presumption in favor of the public's right to access those records. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Under Ninth Circuit law, a party must demonstrate "compelling reasons" to seal motion-related filings where "the motion at issue is more than tangentially related

---

[3] Because certification is appropriate under Rule 23(b)(1)(A) and 23(b)(2), I need not determine whether it would also be appropriate under Rule 23(b)(1)(B). Only one of three subsections of Rule 23(b) must be satisfied in order for a class to be certified. *See* Fed. R. Civ. P. 23(b).

16

1   to the underlying cause of action." *Id*. at 1096-99.  Courts within this circuit apply this standard to
2   motions to seal documents relating to class certification.  *See Adtrader, Inc. v. Google LLC*, No.
3   17-CV-07082-BLF, 2020 WL 6391210, at *2 (N.D. Cal. March 24, 2020) (collecting cases).

4   What constitutes a compelling reason is "left to the sound discretion of the trial court."
5   *Cty. for Auto Safety*, 809 F.3d at 1097 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599
6   (1978)).  The Ninth Circuit has given examples, such as "when a court record might be used to
7   gratify private spite or promote public scandal, to circulate libelous statements, or as sources of
8   business information that might harm a litigant's competitive standing." *Id*.

9   Under this district's Local Rules, sealing requests must also be narrowly tailored to seek
10  sealing only of sealable material.  *See* Civ. L.R. 79-5(c).  "Reference to a stipulation or protective
11  order that allows a party to designate certain documents as confidential is not sufficient to
12  establish that a document, or portions thereof, are sealable." *Id.*

13  The parties seek to seal numerous exhibits (and portions of documents referencing those
14  exhibits) that fall into three primary categories: Kazda's medical records, third party medical
15  records, and internal Aetna documents that it contends contain confidential and competitive
16  business information.  *See generally* Dkt. Nos. 81, 84, 89, 90.

17  **A.  KAZDA'S MEDICAL RECORDS**

18  The requests to seal Exhibits 59, 60, and 61 (filed with the motion for class certification);
19  Exhibits 1 and 7 of the Austin declaration (filed with the opposition); and Exhibit 89 (filed with
20  the reply) are GRANTED.  *See* Dkt. Nos. 81, 84, 89.  These exhibits contain Kazda's personal
21  health information, which courts in this district recognize as meeting the compelling reasons
22  standard.  *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc*., No. 12-CV-03844-JST,
23  2015 WL 984121, at *6 (N.D. Cal. March 24, 2015) (sealing exhibits "because they relate to
24  personal health issues"); *see also Ortiz v. City & Cty. of San Francisco*, No. 18-CV-07727-HSG,
25  2020 WL 2793615, at *9 (N.D. Cal. May 29, 2020) ("The court agrees that health records properly
26  meet the compelling reasons standard.").  Kazda's personal health information is found throughout
27  these documents, which warrants sealing the exhibits in their entirety.

28  However, Aetna's request to seal Exhibits 2 and 4-9 of the Austin declaration are

17

1   DENIED, as are the requests to seal portions of the opposition that reference these exhibits. *See*

2   Dkt. No. 84. It appears that Aetna seeks to seal these exhibits in their entirety. While some

3   portions of the documents reference Kazda's personal health information, they also discuss other

4   topics. The request is not narrowly tailored to seek sealing only of sealable material. *See* Civil

5   L.R. 79-5(c); *see also Icon-IP Pty Ltd.*, 2015 WL 984121, at *6 (declining to seal a deposition

6   transcript because in addition to referencing personal health issues, it included "extensive

7   discussion of unrelated topics" and thus was not narrowly tailored.).

8       I will consider a more tailored motion to seal, which Aetna may file within fourteen days

9   of the issuance of this Order. Until that deadline has passed and I have reviewed any motion that

10  is filed, the court will not unseal these exhibits. Should Aetna file another motion, it should attach

11  a version of the opposition highlighting the portions for which sealing is sought as required by

12  Local Rule 79-5(e)(2).

13  **B. THIRD PARTY MEDICAL RECORDS**

14      The request to seal Exhibits 17, 19, 21, 23, 30, 64, 66, 68, 70-73, 75, 78, and 83-85

15  (attached to the class certification motion) and Exhibits S and T (attached to the opposition) is

16  GRANTED. *See* Dkt. Nos. 81, 83. All but one of these exhibits are internal Aetna files with

17  notes about third-party claims. (Exhibit 75 is an appeal of Aetna's denial of coverage that

18  includes a detailed case history of the claimant). These documents not only contain personal

19  health information but that of third parties, disclosure of which would cause a serious invasion of

20  privacy. *See Icon-IP Pty Ltd.*, 2015 WL 984121, at *6 (finding that there were compelling reasons

21  to seal exhibits relating to personal health issues "because disclosure would cause a serious

22  invasion of the privacy of a third party."). Although the names of the third parties are redacted,

23  the files contain detailed information about their medical issues, treatment, and the timeline for

24  which they sought coverage that could allow for their identification. This detailed information is

25  contained throughout the documents, which warrants sealing them in their entirety.

26      The request to seal portions of the documents that reference these exhibits is GRANTED

27  in part for the same reason and because the parties have narrowly tailored their requests to cover

28  only sealable material. For clarity, that includes: Lines 5:19-6:1, 6:4-6:12, 6:15-18; 6:19-26; 7:2-

1    6, and 15:27-16:26 of the class certification motion, and Paragraph 18 of the Davis declaration

2    (Dkt. No. 81-4).  Beyond this, the request to seal portions of documents that reference these

3    exhibits is DENIED.  The remaining portions do not discuss the sealed exhibits in the same

4    amount or level of detail as to allow for the identification of any particular person.

5            The request to seal Exhibits 16, 18, 20, 22, 24-29, 31-49, 65, 67, 74, and 76-77 (also

6    attached to the class certification motion) is also DENIED.  *See* Dkt. Nos. 81, 83.  These exhibits

7    are letters from Aetna denying third-party claims for coverage.  Unlike the Aetna files, the letters

8    do not include detailed information (including specific personal health information) that allow for

9    the identification of any person.  The names and other identifying information of the claimants are

10   redacted, and the letters appear to largely use the same or similar language in denying the claims.

11   The redactions should adequately protect any privacy concerns.

12           For the same reasons, the request to seal portions of documents that reference these

13   particular exhibits is DENIED.  That includes: Lines 5:11-14, 6:2-6:4, 6:18-19, and 6:27-28 of the

14   class certification motion, and Lines 189:17-25 of the McDonough deposition (Dkt. No. 81-5).

15           Finally, the request to seal Exhibit E to the Aetna's supplemental declaration is DENIED.

16   *See* Dkt. No. 90.  While some portions of the deposition testimony reference the personal health

17   information of third parties, the deposition also covers other topics.  The request is therefore not

18   narrowly tailored to seek sealing only of sealable material.  Again, I would consider a more

19   narrow request, which Aetna must file within fourteen days of the issuance of this Order.

20           **C.  OTHER AETNA RECORDS**

21           The request to seal Exhibits 52, 54, 55, 58, and 82 (attached to the motion for class

22   certification) and Exhibits G and L (attached to the opposition) is GRANTED.  Most of these

23   exhibits are internal Aetna documents related to the implementation of the CPBs, including

24   meeting minutes for its policy council, emails, and training materials.  Aetna has satisfactorily

25   shown that these exhibits contain non-public information about Aetna's business practices that, if

26   disclosed, could prejudice or harm Aetna by providing its competitors with information about

27   Aetna's specific claim-handling policies.  *See Google Inc. v. Eolas Tech. Inc.*, No. 15-CV-05446-

28   JST, 2016 WL 9243337, at *2 (N.D. Cal. March 22, 2016) (sealing information about "non-public

business practices, including internal organizational and operational details."). If Aetna's competitors were to receive this information, it could compete for Aetna customers by distinguishing the way they handle similar claims. Similarly, disclosing Exhibit 58, which is a masters service agreement between Aetna and a customer, could harm Aetna by providing other customers with access to the specific terms of this particular agreement.

The requests to seal the portions of documents that reference these materials are also GRANTED. This includes: Lines 7:16-20 and 8:1-3 of the class certification motion, Page 151 of the McDonough deposition (Dkt. No. 81-5), and Lines 5:11-14 of the McDonough declaration (Dkt. No. 84-3).[4]

## CONCLUSION

For the reasons stated above, Kazda has satisfied the requirements for class certification under Rule 23. The following class is certified:

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Aetna and whose claims for liposuction treatment of their lipedema were denied as cosmetic.

Kazda is appointed class representative and her counsel class counsel.

A Case Management Conference is set for May 31, 2022, at 2:00 p.m. A Joint Case Management Statement is due by May 24, 2022.

**IT IS SO ORDERED.**

Dated: April 26, 2022



William H. Orrick
United States District Judge

---

[4] To the extent I referenced any of the sealed documents in this Order, it was necessary to explain the analysis (particularly concerning numerosity). I did so in a manner that avoided disclosing personal health or proprietary business information.