UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHALA KAZDA,

            Plaintiff,

        v.

AETNA LIFE INSURANCE COMPANY,

            Defendant.

Case No.  19-cv-02512-WHO

**ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY CLASS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 121, 125, 150

This is a class action brought under the Employment Retirement Income Security Act of 1974 ("ERISA") arising from defendant Aetna Life Insurance Company ("Aetna")'s alleged denial of all claims for liposuction surgery to treat lipedema, a rare but painful disease, as "cosmetic." Before me are two motions: Aetna's motion to decertify the class and plaintiff Michala Kazda's motion for summary judgment.

Aetna's motion for decertification is DENIED. The Ninth Circuit's recent decision in *Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023) (*Wit II*) reaffirms the basis for my earlier decision to certify Kazda's denial of benefits claim. *See* Order Granting Class Cert. ("Class Cert. Order") [Dkt. No. 99]. *Wit II* abandoned a prior holding that reprocessing was not an available remedy under ERISA, instead ruling that reprocessing may be an appropriate remedy where an administrator has applied the wrong standard and the claimant could have been prejudiced by the application of that standard. The new decision also removed language suggesting that plaintiffs in denial of benefits actions must show entitlement to a "positive benefits determination" in all circumstances. Both changes undercut Aetna's arguments in favor of decertification. In addition, I previously found that Kazda sought appropriate equitable relief in her breach of fiduciary duty

class claims and nothing in *Wit II* suggests that I should decertify it either.

Kazda's motion for summary judgment is also DENIED.  Aetna shows disputed facts material to both the denial of benefits and breach of fiduciary duty claims.  It offers testimony from the medical director who reviewed Kazda's claim, along with files of some claims for liposuction that were approved and some that were denied, to show a dispute of material fact whether Aetna categorically denied such claims as cosmetic or individually determined that the requested procedures were not medically necessary.  And it provides evidence showing its lack of financial motivation in changing criteria related to lipedema and the existing medical uncertainty regarding the disease and use of liposuction as a treatment, creating a material dispute regarding Kazda's breach of fiduciary duty claim.

## BACKGROUND

### I.      FACTUAL BACKGROUND

Kazda is a beneficiary under an ERISA-governed health insurance plan through her husband's employer, Ipsos America, Inc. ("Ipsos").  *See* Mot. for Summ. J. ("MSJ") [Dkt. No. 121] 6:3-11 (citing Kazda Decl. ¶ 2)[1]; Oppo. to Mot. for Summ. J. ("MSJ Oppo.") [Dkt. No. 125] 2:18-22.  Ipsos self-funded the plan but had a Master Services Agreement with Aetna under which Aetna construes plan terms and determines benefits.  *See* MSJ, Ex. 15 at 308.

Aetna plans include a general exclusion for "[c]osmetic services and plastic surgery," described as "[a]ny treatment, surgery (cosmetic or plastic), service or supply to alter, improve, or enhance the shape or appearance of the body.  Whether or not for psychological or emotional reasons."  MSJ, Ex. 1 at 8.  "Cosmetic" is defined as "[s]ervices, drugs or supplies that are primarily intended to alter, improve or enhance your appearance."  *Id*. at 9.

Aeta also uses Clinical Policy Bulletins ("CPBs") that are considered when a claim is reviewed.  *See id*., Ex. 2 ("McDonough Decl.") at 66:17-69:9.  Two CPBs are important to this case.  The first, CPB 0311, relates to "Cosmetic Surgery" and reads in relevant part:

> Aetna plans exclude coverage of cosmetic surgery that is not medically necessary,

---

[1] This declaration was submitted in support of class certification, and can be found at Dkt. No. 80.

United States District Court
Northern District of California

> but generally provide coverage when the surgery is needed to improve the
> functioning of a body part or otherwise medically necessary even if the surgery also
> improves or changes the appearance of a portion of the body.

*See* MSJ, Ex. 6 at 181.  It then lists procedures that are "considered cosmetic in nature" and others

that are "considered medically necessary when criteria are met."  *Id*. at 181-184.  The latter

category lists "lipectomy or liposuction and autologous fat grafting," which "are considered

medically necessary for breast reconstruction according to the medical necessity criteria" in

another CPB.  *See id*. at 183.

The second CPB, CPB 0211, relates to "Abdominoplasty, Suction Lipectomy, and Ventral

Hernia Repair."  MSJ, Ex. 7.  It states that "Aetna considers abdominoplasty, suction lipectomy, or

lipoabdominoplasty cosmetic."  *Id*. at 194.

In April 2018, Kazda sought coverage for a procedure known as "tumescent liposuction"

(also referred to herein as "liposuction" or "lipedema surgery") to treat lipedema, a rare condition

that involves an abnormal buildup of fat tissue, usually in the lower body.  *See* MSJ at 1:3-9, 6:12-

16; MSJ Oppo. at 2:18-22, 3:2-4, 11:10-11.  Lipedema is progressive, and in later stages can cause

pain and immobility.  *See* MSJ at 1:3-9, 6:12-13; MSJ Oppo. at 3:15-18.

Aetna denied Kazda's claim in a letter dated April 25, 2018.  MSJ, Ex. 18.  That letter

states that "[c]overage for this service"—described as "SUCTION ASSISTED LIPECTOMY;

LOWER EXTREMITY"—"has been denied for the following reason(s)," then:

> We reviewed information received about your condition and circumstances.  We used
> the Clinical Policy Bulletin (CPB): Cosmetic Surgery.  Based on CPB criteria and the
> information we have, we are denying coverage for this procedure.  This procedure is
> meant to improve appearance, not to correct a physical problem that affects your daily
> activities.

*Id*.

Kazda appealed the decision through her surgeon, Dr. Dung Nguyen.  *Id*., Ex. 22 at 377.

Nguyen described lipedema as a "debilitating disease" and said that Kazda "has exhausted

conservative treatment options without sustained improvement of her symptoms," including

"consistent use of manual lymphatic drainage, wearing of compression garment, compression

wrapping, mechanical pumping, and weight loss for over 6 consecutive months," but that her

condition had worsened.  *See id*.  He also stated that Kazda "reports pain and limited range of

United States District Court
Northern District of California

motion," that the size of her leg had affected her gait and balance and contributed to joint pain. *See id*. He then wrote that "[s]uction-assisted lipectomy is the only effective method for this condition." *See id*.

Aetna denied the appeal in a letter dated June 5, 2018. *See* MSJ, Ex. 19 at 353. It acknowledged the symptoms and ineffective conservative treatment options that Nguyen had reported but said that the claim denial was upheld because "Aetna considers suction lipectomy cosmetic." *See id*. at 354. It then said that the "decision was made utilizing Aetna's Clinical Policy Bulletins, Abdominoplasty, Suction Lipectomy, and Ventral Hernia Repair." *Id*.

Kazda appealed the decision again by telephone on October 19, 2018. MSJ, Exs. 20, 21. Aetna again denied the appeal, writing:

> We are upholding the previous decision to deny the request for coverage of suction-assisted lipectomy of the right hip and leg. The reason for this determination is coverage for medical necessity is not met. Aetna considers this procedure cosmetic for this location, per the above referenced guidelines.

MSJ, Ex. 20 at 364. The letter cited CPB 0211, the plan language about cosmetic services and plastic surgery, and its definition of "cosmetic." *Id*. at 366.

In January 2019, at a meeting of Aetna's Clinical Policy Council, Robert McDonough, Aetna's senior director of Clinic Policy Research and Development, proposed revising CPB 0311 to state that "liposuction for treatment of lipedema that is causing symptoms (e.g., edema, pain, interference with function, and restriction of movement) is considered medically necessary if conservative and supportive measures (e.g., compression therapy, exercise therapy, manual lymphatic drainage and skin care) have failed. Otherwise, liposuction for lipedema is considered cosmetic."). MSJ at 5:20-21 (citing MSJ, Ex. 2 at 48-51, Ex. 13 at 274). The board rejected his proposal. *See* MSJ, Ex. 13 at 274.

In March 2019, Aetna published a revised version of CPB 0031, which for the first time mentioned lipedema. *See id*., Ex. 8. The background section of the CPB characterized lipedema as a "painful disorder" and described some of its symptoms and therapy options. *Id*. at 207. It also stated that "[s]ince the introduction of tumescent technique, liposuction has been used as a surgical therapeutic option." *Id*. The revised CPB also mentioned studies describing the diagnosis

4

and treatment of lipedema.  *Id*.

In May 2020—after Kazda filed this lawsuit—Aetna revised CPB 0211 "to set forth detailed diagnostic criteria for the coverage of lipedema surgery."  *See* MSJ Oppo. at 10:17-11:3 (citing in part McDonough Decl. ¶ 19)[2]; MSJ at 5:1-4 (citing Ex. 10 at 239-40).  The new CPB stated:

> Aetna considers water-assisted liposuction medically necessary in persons with pain and disability from lipedema who have failed to respond to three or more months of conservative management (compression or manual therapy) and who meet the following diagnostic criteria for lipedema.

MSJ, Ex. 10 at 239.  The diagnostic criteria listed covers the claimant's medical history and physical examination findings.  *Id*. at 239-40.

Aetna updated CPB 0211 again in August 2020 to include what it describes as minor revisions from Kazda's counsel, whom Aetna had invited to comment on the May 2020 version. *See* MSJ Oppo. at 11 n. 13 (citing McDonough Decl. ¶ 20).  That version of CPB 0211 remains in effect today.  *See id*.

## II.     PROCEDURAL BACKGROUND

Kazda filed this suit in May 2019, asserting two claims under ERISA: denial of benefits and clarification of rights under section 1132(a)(1)(B), and breach of fiduciary duty under section 1132(a)(3).  Dkt. No. 1.  I granted Aetna's first motion to dismiss but denied the second.  Dkt. Nos. 30, 35.  The First Amended Complaint ("FAC") contains the same two claims.  Dkt. No. 34. The central theory of Kazda's case is that Aetna improperly and consistently denied claims for liposuction treatment of lipedema as "cosmetic" when in fact such treatment would treat the functional problems of pain and immobility.  *See generally id*.

Kazda moved to certify the class in December 2021 under Federal Rules of Civil Procedure 23(b)(1) and (b)(2).  Dkt. No. 80.  In her motion, Kazda emphasized her request for an injunction ordering Aetna to reprocess the previously denied claims under the revised CPB 0211. *See, e.g.*, Mot. for Class Cert. ("Class Cert. Mot.") [Dkt. No. 80] 2:1-3 ("Ms. Kazda now seeks . . .

---

[2] McDonough's declaration was also proffered at class certification, and can be found at Dkt. No. 85.

United States District Court
Northern District of California

United States District Court
Northern District of California

an order that Aetna reprocess these previously denied requests under appropriate medical necessity criteria."); 13:20-22 ("[A]t the very least, common issues include whether Aetna's coverage position prior to August 2020 was incorrect, and whether it should be required to give notice and reprocess all previously denied lipedema surgery requests using appropriate medical necessity criteria."); 18:13-17 ("Kazda has an interest in vigorously prosecuting this case on behalf of the proposed class because she seeks to require Aetna to reprocess its previous denials of coverage request for lipedema surgery using the criteria in Aetna's current CPB 0211."); *see also* 12:-6 (stating that the "proposed class seeks declaratory and injunctive relief only, not monetary relief").

At class certification, this so-called "reprocessing injunction" implicated whether Kazda had standing and thus was an adequate and typical class representative. Aetna argued that she lacked standing to seek injunctive relief on a class-wide basis because she could not show that she was threatened by a repetition of the injury alleged (denial of her claim for lipedema surgery under Aetna's former policy), nor that she would qualify for the coverage she sought on behalf of the class (under Aetna's new policy). *See* Oppo. to Class Cert Mot. ("Class Cert. Oppo.") [Dkt. No. 84] 14:10-19. In response, Kazda asserted that:

> This case does not seek to establish that a given surgery, even by Ms. Kazda, is covered. Rather, the class action allegations seek to establish that Aetna's past denials of lipedema surgery as "cosmetic" was wrong, thereby paving the way for these claims to be considered under appropriate eligibility criteria. Accordingly, whether Ms. Kazda or any class member is ultimately entitled to coverage for their lipedema surgery is irrelevant. Ms. Kazda need not demonstrate that she will ultimately obtain lipedema surgery to prevail in this case at all, let alone to have standing.

Class Cert. Reply [Dkt. No. 87] 12:10-16.

I determined that Kazda had standing to pursue injunctive relief, and thus was an adequate and typical representative of the class, because she sought retrospective relief in the form of the reprocessing injunction. *See* Class Cert. Order 7:16-9:21. I also determined that she had standing to seek an injunction requiring Aetna to provide notice to affected class members. *Id.* at 9:19-21. Having found the other Rule 23 requirements satisfied, I certified the following class under Rules 23(b)(1)(A) and (b)(2):

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Aetna and whose claims for liposuction treatment of their lipedema were denied as cosmetic.

*See id.* at 1:13-24, 20:11-15.

Kazda moved for summary judgment in late January 2023.  Dkt. No. 120.  The Ninth Circuit issued a decision in *Wit v. United Behav. Health* that rejected reprocessing injunctions as a remedy under ERISA, and based on it Aetna filed its motion to decertify the class.  58 F.4th 1080 (9th Cir. 2023); Mot. to Decertify ("Decert. Mot.") [Dkt. No. 133].  I continued the summary judgment hearing so that both motions could be heard together.  *See* Dkt. Nos. 120, 132, 133.  Then the Ninth Circuit issued a new ruling in *Wit v. United Behavior Health—Wit II*—and I requested supplemental briefing from both parties addressing the impact the new decision has on Aetna's motions to decertify the class and for summary judgment. *See* Dkt. Nos. 150, 153, 155; *see also Wit v. United Behav. Health*, 79 F.4th 1068 (9th Cir. 2023).  These matters are finally ready for decision.

## LEGAL STANDARD

### I.        CLASS DECERTIFICATION

"Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Fed. R. Civ. P. 23(c)(1) ("An order that grants or denies class certification may be altered or amended before final judgment.").  "The types of 'developments' that lead to modification or decertification can be evidentiary or legal."  *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018) (citations omitted).  Although the burden of showing why a court should consider decertification "falls squarely on the shoulders of defendants," if the defendant "provides a good reason to revisit certification," the burden to show that Rule 23's requirements are met remains with the plaintiff. *See id.*; *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011).

Certification under Rule 23 is a two-step process.  *See* Fed R. Civ. P. 23.  The party seeking certification must first satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  Specifically, Rule 23(a) requires a showing that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of those of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking certification must then establish one of three grounds set forth in Rule 23(b), of which two are at issue.  A class action may proceed under Rule 23(b)(1)(A) if "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).  A class may proceed under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

## II.      SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial."  *Id.*  The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant.  *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility

United States District Court
Northern District of California

1    determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

2    facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony

3    does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*

4    *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

5                                              **DISCUSSION**

6    **I.       MOTION TO DECERTIFY CLASS**

7            Aetna's motion for decertification relies heavily upon the Ninth Circuit's first decision in

8    *Wit*, where the court reversed certification of the plaintiffs' denial of benefits claim after

9    concluding that "reprocessing"—in the form of an injunction requiring the defendants to reprocess

10   class members' claims in accordance with new coverage guidelines—was not an available remedy

11   under ERISA. *See* Decert. Mot. 2:1-3 (citing *Wit*, 58 F.4th 1094-95). Under it, Aetna argued that

12   "ERISA does not authorize the class-wide reprocessing remedy Kazda seeks." Decert. Mot. at 8:7-

13   15. This was a sufficient legal development that warranted considering decertification, given the

14   role that the reprocessing injunction played in my Order certifying the class. *See* Class Cert. Order

15   at 1:13-24; *see also Korean Ramen*, 2018 WL 1456618, at *2.

16           Upon rehearing, the Ninth Circuit vacated its prior holding in *Wit* and clarified that

17   reprocessing may be an available remedy where an administrator has applied an incorrect standard

18   that could have prejudiced the claimant. *Wit II*, 79 F.4th at 1084. Now Aetna contends that Kazda

19   "seeks to use the purely procedure device of class action to avoid having to prove the substantive

20   merits of any individual member's claim for benefits" and to "circumvent the deferential standard

21   of review to which Aetna is entitled under ERISA." Def.'s Supp. Brief. ("Def.'s Supp.") [Dkt.

22   No. 153] 1:17-20. Aetna argues that even under *Wit II*, Kazda does not meet the prerequisites laid

23   out by the Ninth Circuit for the type of relief plaintiffs seek. It is up to Kazda to show that Rule

24   23's requirements are still met considering both *Wit* rulings. *See Marlo*, 639 F.3d at 947-48. If

25   they are, then the class will proceed.

26   **A.       *Wit II***

27           In *Wit*, the plaintiffs challenged defendant United Behavioral Health ("UBH")'s use of

28   internal coverage guidelines by bringing two claims under ERISA: breach of fiduciary duty and

                                                        9

denial of benefits pursuant to 1132(a)(1)(B) and (a)(3)(B).[3]  *See Wit,* 58 F.4th at 1088-89.  The plaintiffs sought injunctive and declaratory relief for their breach of fiduciary duties claims; and for their denial of benefits claims, plaintiffs sought an injunction ordering the reprocessing of class members' claims in accordance with UBH's new guidelines.  *See id.* at 1090-91.

The plaintiffs in *Wit* were beneficiaries of health benefit plans governed by ERISA for which UBH was the claims administrator.  *Wit II*, 79 F.4th at 1076.  Some of the plans granted UBH the discretion to interpret plan terms and determine whether a requested service was covered.  *Id.* at 1077.  To assist with clinical coverage determinations, UBH developed internal guidelines that were used by UBH physicians.  *Id.*  These guidelines included the ones that plaintiffs challenged, including the "Level of Care Guidelines" and "Coverage Determination Guidelines" (together, the "Guidelines").  *Id.*  The Guidelines applied across plans and were not customized based on specific plan terms.  *Id.*  Plaintiffs alleged that many aspects of the Level of Care Guidelines were more restrictive than terms of the plans and criteria mandated by state laws. *Id.* at 1077-78.

Plaintiffs sought certification of three classes, two "Guideline" classes and one "State Mandate" class, all of which the district court certified.  *Id.* at 1080.  The classes included every person who had been subject to any type of behavioral health decision denied under UBH's "Level of Care Guidelines" or UBH's Coverage Determination Guidelines, including individuals whose claims were denied at the initially requested level of care but who ultimately accepted alternate care and individuals whose claims were denied both because the requested treatment was inconsistent with the UBH Guidelines and for other reasons.  *Id.* at 1079.  Plaintiffs stipulated that "'if the case is certified as a class case'" then "'additional theories'" requiring "'individualized inquiries as to why UBH's denials of the named Plaintiffs' claims for benefits were wrongful'" would "'not be part of the case.'" *Id.* at 1080.  Notably, plaintiffs did not challenge every provision of the Guidelines.  *Id.* at 1085.  They sought reprocessing of their claims as relief for

---

[3] Plaintiffs in *Wit* sought relief for breach of fiduciary duty under 1132(a)(3) to the extent the injunctive relief they sought under 1132(a)(1)(B) for that same claim was unavailable.

United States District Court
Northern District of California

their denial of benefits claim, *see id.* at 1079, and injunctive and declaratory relief for their breach of fiduciary duties claim. *Id.* at 1080. The district court granted class certification. *Id.*

In the first *Wit* ruling, the Ninth Circuit reversed the district court's order certifying the class based on the denial of benefits claim after determining that "reprocessing" was not an available remedy under either sections 1132(a)(1)(B) or 1132(a)(3) of ERISA.[4] *Wit*, 58 F.4th at 1094-95. But in *Wit II*, the Ninth Circuit changed course and ruled that reprocessing may be an available remedy for a denial of benefits claim where the administrator has applied an incorrect standard and the claimant has shown that the application of the wrong standard could have prejudiced them. *Wit II*, 79 F.4th at 1084 (ruling that "remand may be an appropriate remedy in some cases where an administrator has applied an incorrect standard" and that the court has "never held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard could have prejudiced the claimant.")

**B.     Reprocessing Is An Available Remedy for the Denial of Benefits Class**

Aetna argues that *Wit II* confirmed that neither ERISA sections 1132(a)(1)(B) nor (a)(3) authorize reprocessing as a "standalone remedy" that is "untethered" to consideration of the "individualized circumstances of each particular member's entitlement to benefits and the deferential abuse of discretion standard applicable to an ERISA administrator's benefit determinations." Def's Supp. at 5:9-13. It contends that Kazda is seeking such an "untethered" remedy. *Id.* It asserts that like the plaintiffs in *Wit,* Kazda is trying to certify a class on the premise that "the class members [are] entitled to have their claims reprocessed regardless of the individual circumstances at issue in their claims." *Id.*[5]

---

[4] In the first *Wit* decision, the court wrote that the remedies available under the first provision, section 1132(a)(1)(B), are "to recover benefits or to enforce or clarify rights under the plan," meaning that "a remand to the administrator for revaluation is a *means* to the ultimate remedy." *Id.* at 1094 (emphasis in original). "Simply put," the court wrote, "reprocessing is not truly the *remedy* that plaintiffs seek, it is the *means to the remedy* that they seek." *Id.* at 1095 (same). The court also held that "[a] plaintiff asserting a claim for denial of benefits must therefore show that she may be entitled to a positive benefits determination if outstanding factual determinations were resolved in her favor." *Id.*

[5] While Kazda focused on the reprocessing injunction, that was not the only remedy sought. As I noted in my Order granting class certification, she also requested an injunction requiring Aetna to "provide notice of the reformation of its claims adjudication process for such claims in the form

United States District Court
Northern District of California

Aetna overreads *Wit II*.  As the Ninth Circuit made clear in *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* and as is unchanged in *Wit II*, "the court should not itself decide whether benefits should be awarded." 85 F.3d 455, 456 (9th Cir. 1996). Kazda is not required to show that her claim or the claims of the class members would in fact be covered under Aetna's guidelines.

In *Saffle*, a long-term disability plan participant sued an administrator challenging denial of benefits.  The plaintiff had claimed that she was totally disabled but the plan administrator determined that she was not entitled to benefits.  *Id.*  The court held that the administrator abused its discretion by adding a requirement of coverage that conflicted with the language of the plan.  It concluded, however, that where a plan administrator "construes a plan provision erroneously, the court itself should not decide whether benefits should be awarded but rather should remand to the administrator for it to make that decision under the plan, properly construed." *Id.*

*Wit II* did not change this requirement.  *See generally Wit II*, 79 F.4th 1068.  In fact, it referenced *Saffle* as an instance where the court has ordered remand for reprocessing.  *Id*. at 1084. I relied in part on *Saffle* when granting class certification.  *See* Class Cert. Order at 9:4-10 (noting that in *Saffle*, the court "ma[de] it explicit, that remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination.")

Moreover, *Wit II* deletes language from the first *Wit* decision that stated that plaintiffs in denial of benefits actions must show entitlement to a "positive benefits determination" in all circumstances.  *See* Pl's Supp. Brief [Dkt. No. 155] at 2:21-22; *see generally Wit II*, 79 F.4th 1068; *compare Wit II with Wit*, 58 F.4th at 1094 (holding that "[a] plaintiff asserting a claim for denial of benefits must . . . show that she may be entitled to a positive benefits determination if outstanding factual determinations were resolved in her favor.")  While the court in *Wit II*

---

and manner required by ERISA to all class members." *See* Class Cert. Order 7:21-8:1 (citing FAC ¶ 60).  I determined that Kazda does have standing to pursue the injunction for notice because it functions as a form of retrospective relief and because the harm that existed at the time Kazda filed suit (the denial of her claim) persists today.  *See id.* 8:22-24.  The parties do not address the notice injunction in their supplemental briefing, and *Wit II* does not change this conclusion.

United States District Court
Northern District of California

explained that it declines to remand for reevaluation where it would be a "useless formality" because the administrator's alleged error did not prejudice the claimant or because it was clear that the claimant was ineligible for benefits, *see id.* at 1084, that is different than requiring a "positive benefits determination." Aetna's argument to the contrary is not persuasive.

To be sure, *Wit II* makes clear that a class cannot be certified without a showing that application of the wrong standard could have prejudiced the claimant. *Wit II*, at 1084. This language establishes a floor below which claimants seeking to certify a class based on reprocessing as a remedy may not fall; the floor is a showing of possible prejudice. By explaining that the court has declined to remand for reevaluation where reprocessing would be a "useless formality" because the administrator's alleged error did not prejudice the claimant or where it was "clear" that the claimant was not eligible for benefits, the Ninth Circuit clarified the guidelines for evaluating similar classes for certification based on reprocessing remedies. *See id.* I have already found that Kazda and the class members made a showing, at least for the purposes of class certification, that application of the wrong standards (here, Aetna's CPBs) could have prejudiced them. *See* Class Cert. Order at 11:24-28, 12:1-2. The class meets the minimum requirements for reprocessing. The issue that will drive the resolution of this litigation is whether Aetna's CPBs actually prejudiced claimants.

Aetna also focuses on the facts that led the court in *Wit II* to find that the district court erred in certifying the reprocessing class. It argues that "Kazda's class is overbroad because it makes no distinction between members who have a valid individual claim and those who do not" and for that reason, she "makes the same mistake as the plaintiffs made in *Wit*." Def's. Supp. at 6:17-21. The flaws that the Ninth Circuit found fatal to class certification in *Wit II* do not appear in Kazda's class.

First, the court noted that the proposed class in *Wit* included "members whose claims were denied *in part* based on the Guidelines . . . and [defendants] pointed to at least some evidence that some class members' claims may have been denied for reasons wholly independent of the Guidelines." *Wit II*, at 1085. For such claimants, the court ruled, remand for reevaluation might be a "useless formality," the kind which courts in this circuit have found forecloses remand for

reprocessing as a remedy. *Id.* Here, in contrast, I have already determined (at least at this stage of the case) that there is a common question that Aetna "considered suction lipectomy a cosmetic procedure and denied class members' claims on those grounds," and that the letters denying Kazda's and other class members' coverage asserted these rules and criterion as the reason for denying their claims. Class Cert. Order at 11:24-27. Remand for reevaluation would not be futile because the record on class certification shows that Aetna's CPBs were the sole expressed reason that their claims were denied. Whether the substantive denial was appropriate will drive the resolution of this litigation, but in light of the record on class certification, the potential prejudice shows reprocessing would not be a useless formality.

Second, plaintiffs in *Wit* did not challenge all provisions of the standards that formed the basis for their claims, nor did they show that claimants who were denied coverage "solely based on [the] unchallenged provisions" of the standards were "denied [the] full and fair review" guaranteed to them by ERISA. *Wit II*, at 1085. The class in *Wit* still included these plaintiffs. *Id.* The Ninth Circuit ruled that including claimants whom plaintiffs failed to show could have been prejudiced by defendants' employ of the standards at issue in *Wit* was fatal to the class. *Id.*

Different than the plaintiffs in *Wit II*, Kazda challenges what she has sufficiently shown to be one single, categorical rule of non-coverage for all class members' claims for Lipedema Surgery. *See generally* Class Cert. Mot.; *see* Class Cert. Order at 11:24-28, 12:1-2. The Clinical Policy Bulletins at issue, CPB 0031 and CPB 0211, expressly state that liposuction is a "cosmetic" procedure in all circumstances except when used to perform medically necessary breast reduction surgery. Class Cert. Order at 11:24-28. And Aetna's form denial letters to all class members denied Lipedema Surgery on "cosmetic" grounds, identifying the CPBs as the basis for the denial. *Id.* Far from the situation in *Wit,* every claimant in this case can show how he or she could have been prejudiced by the challenged standard in its entirety. For that reason, the class members here meet the baseline for remand as laid out by the Ninth Circuit in *Wit II*.

Because the classes in *Wit II* were not limited to "those claimants whose claims were denied based only on the challenged provisions of the Guidelines," the court ruled that Rule 23 had been applied in such a way that unlawfully enlarged or modified plaintiffs' substantive rights.

United States District Court
Northern District of California

1   *Wit II*, at 1085.; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).  That is not

2   the situation here, where the class has been limited to individuals whose claims were denied based

3   solely on the CPBs at issue.

### C.      The Breach of Fiduciary Duty Class May Proceed

5          Aetna argues that Kazda's class for breach of fiduciary duty is not sustainable under

6   ERISA sec 1132(a)(3), *see* Decert. Mot. at 17, because a plaintiff who sues for denial of benefits

7   under section 1132(a)(1)(B) cannot also proceed under a "duplicative" theory of recovery under

8   1132(a)(3); where the alleged injury is improper denial of benefits, "a claimant may not bring a

9   claim for denial of benefits under 1132(a)(3) when a claim under 1132(a)(1)(B) will afford

10   adequate relief."  *Wit II*, at 1086 (citing *Castillo v. Metro Life Ins. Co.*, 970 F.3d 1224, 1229 (9th

11   Cir. 2020)).  And if a plaintiff declines to make the necessary showing to seek relief under

12   1132(a)(1)(B), she cannot receive relief under the catch all provision, 1132(a)(3).  *Id.*

13          The *Wit* plaintiffs' denial of benefits claim failed because of the variation in individual

14   circumstances from class member to class member.  *Supra* I(A).  Here, plaintiffs are not victim to

15   the same fatal flaws—they have made the showing necessary to seek relief under 1132(a)(1)(B).

16   *Id.*  They seek additional and different relief under 1132(a)(3) for Aetna's alleged breach of

17   fiduciary duties.  This is permissible.

18          So long as the class seeks "appropriate equitable relief," *see CIGNA Corp. v. Amara*, 563

19   U.S. 421, 439 (2011), Kazda may bring claims for breach of fiduciary duty under 1132(a)(3).

20   In *Wit II*, plaintiffs had not shown how reprocessing constituted relief that was typically available

21   in equity "for infirm Guidelines unrelated to Plaintiffs' claim for benefits."  *Wit II*, at 1086.  Unlike

22   in *Wit*, Kazda and her class do not seek equitable relief for incorrect standards that are unrelated to

23   their claims; they seek equitable relief for the allegedly "infirm" standard that is the basis of their

24   claims.  *Wit II* does not prevent plaintiffs from seeking relief (reprocessing or otherwise)[6] under

25   1132(a)(3) where they have made a showing to seek relief under 1132(a)(1)(B) and the relief

26

27   ───────────────

[6] Kazda also asserts that numerous forms of relief besides reprocessing are available to the class in connection with their breach of fiduciary duty claim, including declaratory relief and surcharge. Pl's Supp. Brief 7:3-5.

28

available to them under 1132(a)(1)(B) is not adequate.[7]

### D.     The Classes Meet Rule 23 Requirements

#### 1.     Commonality and Typicality

Aetna argues that Kazda and her class have "'expressly disclaimed the actual remedy available to them . . . in an attempt to satisfy Rule 23's commonality requirement'" like the plaintiffs in *Wit* did.  Decert. Mot. at 11:10-15.  It states that Kazda cannot "sidestep the substantive obligation of each class member to establish an individual rights benefit under ERISA." *Id.*  For the reasons I just explained, this argument fails.  *Supra* I(B).

Aetna also contends that Kazda's class fails the commonality requirement for the same reasons a case in this circuit found that plaintiffs failed to show commonality where parents of an autistic child filed a putative class action against health insurers, claiming the defendants systematically denied, reduced, or revised down insurance coverage for medically necessary therapy for children with autism spectrum disorder (ASD) in violation of ERISA.  Decert. Mot. at 12:21-27; *see Crosby v. California Physicians' Service*, 498 F.Supp. 3d 1218 (C.D. Cal. 2020).  There, the court found that plaintiffs "[did] not allege that the Guidelines . . . or the challenged criteria . . . are strict bright-line rules that require a particular result in any given situation."  *Crosby*, 498 F.Supp. at 1230.  The policy or practice plaintiffs challenged in *Crosby* was defendants' consideration of age and particular medical history in medical necessity determinations.  *Id.*  Common questions in that case included: "'Are the ABA Therapy Criteria consistent with generally accepted professional standards?' and 'Did Defendants engage in systemic Care Shaping and, if so, did Defendants' Care Shaping actions violate their ERISA fiduciary duties?'"  *Id.*  The court stated that it could not determine "in one stroke" whether the defendants' alleged policy was lawful or unlawful as to every class member, and as such, the

---

[7] In her opposition filed prior to the new *Wit* decision, Kazda argues that "regardless of whether class certification remains appropriate under a reprocessing theory, it remains appropriate under principles of waiver." Oppo. at 4:4-5.  She essentially argues that because Aetna denied Lipedema Surgery on "cosmetic" grounds and only cited CPB 0031 and CPB 0211 in denying class members' claims, there is a common question of whether Aetna waived all other defenses (including all defenses predicated on individualized medical necessity). *See id.* 6:23-7:8. I need not reach this issue because I am denying the motion to decertify on other grounds.

commonality requirement for class certification had not been met. *Id.* (citing *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) (where the court held that "[t]he commonality element may be fulfilled if the court can determine 'in one stroke' whether a single policy or practice which the proposed class members are all subject to 'expose them to a substantial risk of harm.'")). The court decided that plaintiffs failed to meet the commonality requirement because they "[had] not shown that there is any specific, uniform, and applied policy and practice that providers use" to revise down insurance coverage for children with ASD. *Id.*

Here, in contrast, I have determined that Kazda has sufficiently shown for the purposes of class certification that Aetna "considered suction lipectomy a cosmetic procedure and denied class members' claims on those grounds." Class Cert. Order at 11:24-27. That is the "one stroke" that will be determined on the merits, the common question that will drive the resolution of the litigation.

As for typicality, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); see also Fed. R. Civ. P. 23(a)(3). As I explained in my order, Kazda's claims and defenses are typical of the class because they have suffered the same or similar injury (their claims for liposuction treatment were denied as cosmetic) that arise from the same alleged course of conduct (Aetna's policy or practice of excluding such claims as cosmetic). Class Cert. Order at 7:3-9. Nothing in *Wit II* changes this conclusion.

### 2.      Rule 23(b)(1) and (b)(2)

Aetna argues that because the first *Wit* decision held that reprocessing "is not truly the remedy that the Plaintiffs seek, it is the means to the remedy they seek," the ultimate remedy Kazda seeks is individualized money damages, which the United States Supreme Court has made clear belong in Rule 23(b)(3) not 23(b)(1) or (b)(2). Decert. Mot. at 15:5-11 (citing *Wit*, 58 4th at 1095); *see also Dukes*, 564 U.S. at 362. *Wit II* explained that reprocessing can be a remedy. *See generally Wit II*, 79 F.4th 1068; *see also supra* I(A). The ultimate remedy Kazda seeks is reprocessing. It does not necessarily require individualized adjudication and is therefore

United States District Court
Northern District of California

appropriate for certification under Rule 23(b)(1) and (b)(2) rather than Rule 23(b)(3). Aetna's

other arguments against certification under Rule 23(b)(1) and (b)(2) similarly depend on the first

*Wit* decision and fail for that reason.

### 3. Redressability

Aetna also argues that a reprocessing class would not satisfy Article III's redressability

requirement because determining whether class members met Aetna's current criteria for

Lipedema Surgery coverage would be based on a retrospective review of clinic records that it

contends "are, in most cases, at least six years old—with the likely result that it will be difficult, if

not impossible, to determine if any class members currently have lipedema symptoms that meet

the coverage criteria and require treatment." Decert. Mot. at 19:4-25:24. This argument is not

persuasive. As Kazda notes, "[i]n a class action, standing is satisfied if at least one named plaintiff

meets the requirements." *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

2007); *see also* MSJ Oppo. at 14:16-24.

Moreover, the cases that Aetna cites in support of its argument that retrospective injunctive

relief will provide no effective relief, *see* Decert. Mot. at 23:9-20, 23:1-5, are either not binding or

inapposite. My perspective on redressability has not changed since my order granting class

certification.

### 4. Abuse of discretion

Aetna argues that class certification would be inconsistent with application of the abuse of

discretion standard to which "Aetna is entitled under ERISA." Def's Supp. at 9:14-15. But *Wit II*

requires that the reprocessing class members show that they could be prejudiced by the

defendant's application of the incorrect standard. As discussed, plaintiffs have made such a

showing here, at least for the purposes of class certification.

The question is whether the claims administrator actually exercised discretionary authority

to adjudicate benefit claims. Where plan terms trigger review for abuse of discretion, the denial

must be reviewed *de novo* if the plan administrator did not in fact exercise its plan-authorized

discretion in denying benefits. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th

Cir. 2006). As I will discuss in the sections concerning Kazda's motion for summary judgment,

1  whether and to what extent the Aetna plan administrator exercised his or her plan-authorized

2  discretion in denying benefits is contested.   This merits issue does not bar class certification now

3  any more than it did when the class was first certified.

4        **E.**       **Declaratory Relief Is an Available Remedy**

5             Kazda seeks declaratory relief related to "prior, still-unremedied denials" of the claims for

6  lipedema surgery.  MSJ Repl. at 12:6-15; *see also* FAC ¶ 60 (stating that Plaintiff seeks "[a]n

7  order declaring that Aetna's denials of Plaintiff's and the class members' claims for liposuction

8  treatment for advanced lipedema were wrong and improper[.]").  Aetna argues that this relief

9  Kazda seeks "is nothing more than the retrospective reprocessing remedy that the court already

10  granted and that the *Wit* decision invalidates."   Decert. Mot. 10 n. 4 (citing in part MSJ Repl,

11  12:6-15).  Aetna's argument fails because reprocessing as a remedy is available after *Wit II*.[8]  As I

12  stated in the order granting class certification, a class may proceed under Rule 23(b)(2) if "the

13  party opposing the class has acted or refused to act on grounds that apply generally to the class, so

14  that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as

15  a whole." Fed. R. Civ. P. 23(b)(2); Class Cert. Order at 16:2-6.  Courts in this circuit have held

16  that focus in a Rule 23(b)(2) class "is not on the claims of the individual class members, but rather

17  whether [defendant] has engaged in a common policy." *In re Yahoo Mail Litig*., 308 F.R.D.

18  577, 599 (N.D. Cal. 2015); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  Kazda

19  has sufficiently alleged, at this point, that Aetna had a policy and practice of denying claims for

20  lipedema surgery as cosmetic, as explained above.  Courts have recognized that class certification

21  is appropriate under Rule 23(b)(2) when the plaintiff seeks a reprocessing injunction, as Kazda

22  does.  *See e.g. Des Roches v. California Physicians' Service*, 320 F.R.D. 486, 508-09 (N.D. Cal.

23  Jun. 15, 2017) (collecting cases).

24             For the foregoing reasons, Aetna's motion to decertify the class is DENIED.

25

26

27  [8] Aetna relied in part on *LD v. United Behavioral Health*, 2023 WL 2806323-YGR, (N.D. Cal.
   Mar. 31, 2023), which relied on the earlier *Wit* decision.  That case bears no weight and would
28  come out differently today.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.      MOTION FOR SUMMARY JUDGMENT[9]

### A.  Denial of Benefits

The parties first dispute which standard of review applies to Kazda's denial of benefits

claim.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber*

*Co. v. Brunch*, 489 U.S. 101, 115 (1989).  "But if the plan *does* confer discretionary authority as a

matter of contractual agreement, then the standard of review shifts to abuse of discretion."  *Abatie*

*v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006); *see also Schikore v.*

*BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001) ("Where the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

to construe the terms of the plan, we ordinarily review the plan administrator's decisions for an

abuse of discretion.") (citations omitted).  The grant of discretionary authority must be

unambiguous.  *Abatie*, 458 F.3d at 963.

Aetna points to language in Kazda's plan that provides such discretionary authority.  *See*

MSJ Oppo. at 15:25-16:1 (citing MSJ, Ex. 15 at 308).  The Master Services Agreement between

Aetna and Ipsos states:

> The Customer [Ipsos] understands that the performance of fiduciary duties under
> ERISA necessarily involves the exercise of discretion on Aetna's part in the
> determination and evaluation of facts and evidence presented in support of any
> claim or appeal.  Therefore, and to the extent not already implied as a matter of
> law, the Customer hereby delegates to Aetna discretionary authority to determine
> entitlement to benefits under the applicable Plan documents for each claim
> received, including discretionary authority to determine and evaluate facts and
> evidence, and discretionary authority to construe the terms of the Plan.

MSJ, Ex. 15 at 308.  The language gives Aetna discretionary authority to determine eligibility for

benefits and construe the plan terms, which would shift the standard of review from de novo to

---

[9] Aetna did not address in its supplemental briefing the impact that *Wit II* has on Kazda's pending
motion for summary judgment, though it did reiterate its request that I deny the motion.  *See* Def's
Supp. Brief 10:19-20.  Kazda addresses the decision in her supplemental briefing and argues that
*Wit II* expands the remedies available to the class but does not significantly impact the liability
issues in this case. Pl's Supp. Brief 9:24-25. I agree.  *Wit II* has little effect on my decision on
summary judgment.

abuse of discretion.  *See Abatie*, 458 F.3d at 963; *Schikore*, 269 F.3d at 960.

Kazda does not dispute the meaning of this plain language.  But she contends that Aetna did not actually exercise this discretion because it categorically denied claims for lipedema surgery as cosmetic.  MSJ at 17:2-10.  Alternatively, she argues that if the abuse of discretion standard applies, it should be "tempered with a high degree of skepticism" due to Aetna's structural financial conflict of interest.  *See id.* at 18:1-21.

The Ninth Circuit has written that "[i]n general, we review de novo a claim for benefits when an administrator fails to exercise discretion."  *Abatie*, 458 F.3d at 972 (citing *Jebian v. Hewlett-Packard Co. Emps. Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1106 (9th Cir. 2003)).  But the examples provided in *Abatie* differ than those at hand: they involve claims that were "deemed denied" because an administrator did not issue a decision within the time required by plan terms or applicable regulations or failed to apply its expertise to a particular decision.  *See id.* (citing cases).  Courts have also determined that an administrator "does not exercise discretion" when it "exercises discretion not granted by the terms of the contract."  *See Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 144 F. Supp. 3d 1097, 1106 [RS] (N.D. Cal. 2015) (citing *Jebian*, 349 F.3d at 1105).  These allegations are not present here.

Kazda points to *Boldon v. Humana Ins. Co.*, 466 F. Supp. 2d 1199, 1210 (D. Ariz. 2006), where the court determined that the plan administrator did not exercise discretion in denying coverage for the plaintiff's cancer treatment because the medical director who reviewed his claim denied coverage not based on his medical record but because of the administrator's internal guideline declaring the treatment "experimental/investigational."  *See* MSJ at 17:2-10.  That is the issue raised by the merits of Kazda's motion: Did Aetna categorically deny her claim for lipedema surgery as cosmetic, based on the CPBs, or did it individually review her claim and, in determining that the surgery was cosmetic, also determine that the surgery was not medically necessary?  That question determines both the appropriate standard of review *and* whether Kazda is entitled to summary judgment.  For reasons I next explain, there is a dispute of material fact over this issue.

Even under de novo review, Kazda's motion for summary judgment fails.  She raises a

number of arguments about waiver, whether the relevant CPBs were supported by studies or other clinical evidence, whether Aetna had a financial bias in declaring liposuction "cosmetic," and whether that classification conflicts with the plan language in arguing that Aetna's denial of claims was "unreasonable and wrong." *See* MSJ at 13:25-16:26.  But the central question is whether the undisputed evidence shows that Aetna categorically denied claims for liposuction for lipedema surgery as cosmetic.

It does not.  Aetna presents evidence that one of its medical directors, Dr. Michael Falvo, reviewed the clinical information submitted with her claim, including medical records from Kazda's physicians.  *See* MSJ Oppo. at 11:10-20 (citing in part Austin Decl., Exs. 1, 2).[10]  Falvo testified that in reviewing Kazda's claims, he did not "have enough information to make a full decision" whether Kazda's condition caused function problems.  *See* Austin Decl., Ex. 2 at 78:12-79:3.  He said that although the records stated that it was "difficult to ambulate," Kazda also had a "normal gait," and that he would need information about her "rates of pain" to assess whether she indeed suffered functional problems.  *See id*. at 79:4-9; *see also* Ex. 1 at 89, 93.  He further stated that it was unclear how long she had used compression garments and that there was no documentation of a "comprehensive plan" that would typically precede a "surgery using comprehensive decongestive therapy."  *See* Ex. 2 at 79:10-18.  Falvo then explained that during a peer-to-peer consultation, he "told them what was missing" and "suggested they send a letter of medical necessity as well as reference articles supporting the procedure that they wanted to perform."  *Id*. at 79:23-80:1.

Falvo also testified that the purpose of a letter of medical necessity was because "if we could get enough medical information, additional medical information . . . it's a possibility that an exception might be able to be made," but that "[b]ased on the information I had, it wasn't available at this time" and that he could "see that there might be a need, but I can't meet the criteria."  *Id*. at 115:24-115:15.  He went on to say that a medical provider might be able to "give additional information to support that this—in this case, if this is not a cosmetic—solely cosmetic .

_____

[10] These exhibits, which were initially submitted at class certification, can be found at Dkt. No. 125.

United States District Court
Northern District of California

. . and show support for a functional component that they're trying to improve . . . say, activities of daily life is being impacted and how this procedure is going to provide a positive impact on this member.  Beyond cosmetic."  *See id*. at 116:19-117:4.

Falvo further stated that he mentioned reference articles "because lipedema and suction-assisted lipectomy for lipedema was not common at all" and that Aetna "really didn't even have any policy that specifically discussed this."  *Id*. at 118:1-10.  He then said:

> [I]f this provider was someone who was doing these procedures for this reason, I was hoping that they had support of reference articles that they could submit, one, to review as far as the medical necessity for and criteria for this particular case. But beyond that, also that they could be submitted to our clinical policy team to be reviewed for consideration or changes to the clinical policy, because that's how we make changes.

*Id*. at 118:11-19.

This evidence directly rebuts Kazda's assertion that her claim for liposuction to treat her lipedema was categorically denied as cosmetic based on the relevant CPBs.  Aetna has proffered sufficient evidence that creates a dispute of material fact that shows: (1) that Falvo reviewed Kazda's medical records in assessing her claim and (2) that he suggested that she submit a letter of medical necessity along with reference articles about liposuction treatment of lipedema to show how the surgery was medically necessary for her.  Had Aetna had a categorical policy of denying as "cosmetic" claims for liposuction to treat lipedema, this review of Kazda's medical records and request for additional information would not have been necessary; all Falvo would have needed to do to assess her claim was check a box.

The language in Aetna's final denial of Kazda's claim also supports Aetna's position that it considered the medical necessity of her surgery.  The October 29, 2018, denial letter states:

> We are upholding the previous decision to deny the request for coverage of suction-assisted lipectomy of the right hip and leg.  The reason for this determination is *coverage for medical necessity is not met*.  Aetna considers this procedure cosmetic for this location, per the above referenced guidelines.

MSJ, Ex. 20 at 364 (emphasis added).

The individual claim files also show a dispute of material fact.  According to Robert McDonough, Aetna's senior director of Clinic Policy Research and Development, Aetna approved

23

14 claims for suction assisted lipectomy before publishing the revised CPB 0211 on May 28, 2020. *See* MSJ Oppo. at 9:4-10 (citing in part McDonough Decl. ¶¶ 27-28).[11]  According to the internal files provided by Aetna, many of those claims were approved outright.  *See* McDonough Decl., Ex. Q (chart summarizing approved claims).  By way of example, although Claim 2A sought "SUCTION ASSISTED LIPECTOMY; LOWER EXTREMITY" and the reviewing medical director cited CPBs 0211 and 0031, noting that the procedure was "considered cosmetic per CPB," the procedure was approved on February 19, 2016.  *See id.*, Ex. S at 2187-88, 2192. The internal files indicated that the patient had "lipidema" and "calf wounds." *Id.* at 2192.  Claim 5A also sought coverage of suction assisted lipectomy for a lower extremity, to address the claimant's "significant bilateral lipedema."  *See id.* at 2279, 2285.  It was initially denied "because medical necessity criteria were not met based upon CPB 0211." *Id.* at 2406.  After the claimant had the surgery, however, it was reimbursed because Aetna "now [had] approval." *Id.* at 2404. And Claim 10A requested coverage for suction assisted lipectomy.  *Id.* at 2112.  The request initially denied as "not medically necessary"—the internal notes cite CPB 0211 and note that "suction assisted lipectomy is considered cosmetic," and also indicates that it was unclear what her diagnosis was and why an earlier liposuction surgery did not address the areas of concern.  *See id.* at 2119-20, 2122-23.  However, the claim was approved on July 5, 2019. *Id.* at 2113.  Although it

---

[11] Kazda objects to McDonough's declaration and the internal claim files on a number of grounds, both general and specific.  *See* MSJ Reply at 14:1-15:20.  She does not provide sufficient grounds to strike the claim files and declaration in their entirety.  I did not consider most of the contested excerpts from the declaration.  *See id.*  I do cite to Paragraphs 27 and 28, and Exhibits S and T. *See id.*  Kazda's objections to them are DENIED.  At summary judgment, courts "do not focus on the admissibility of the evidence's form . . . but instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted and cleaned up).  Even if this evidence constitutes hearsay, is incomplete, or is any of the other objections that Kazda makes, the facts within these paragraphs or exhibits could be admissible at trial, including by live testimony or other means.  *See Faulks v. Wells Fargo & Co.*, 231 F. Supp. 3d 387, 397 [MEJ] (N.D. Cal. 2017) (denying at summary judgment objections that evidence was hearsay because the underlying evidence could be provided in an admissible form at trial, and objections that evidence lacked foundation because the plaintiff testified that he created it).  As for Kazda's objection argues that Exhibits S and T lack foundation, McDonough is one of Aetna's 30(b)(6) designees and testifies that they are internal claim files.  *See* McDonough Decl. ¶¶ 29, 31.

Kazda also objects to Exhibits 1-23 submitted with Aetna's opposition to summary judgment, stating that they were not disclosed in discovery.  *See* MSJ Reply at 15:18-20.  I did not consider any of this evidence in deciding Kazda's motion.

United States District Court
Northern District of California

is unclear from the internal notes why the initial decision was overturned, this evidence shows an individualized review of the claimant's circumstances, an initial decision that it was not "medically necessary" (rather than an outright denial on "cosmetic grounds"), and that Aetna ultimately covered the procedure.

Kazda challenges many of the approved claims, arguing that four did not involve lipedema (Claims 3A, 4A, 6A, and 7A), three were made by an independent external review organization that overruled Aetna's initial determination (Claims 3A, 5A, and 8A), one was unsupported beyond Aetna's spreadsheet (Claim 1A), and four were approved after Aetna's policy council voted to adopt a policy change covering lipedema surgery (Claims 9A, 11A, 13A, and 14A). *See* MSJ Reply at 5:3-13. This further shows a dispute of material fact whether Aetna categorically denied claims for liposuction surgery as cosmetic because Aetna's evidence apparently shows that it *did* approve claims for liposuction (for lipedema, but also other medical issues) before the policy change went into effect and in making at least *some* of its claim determinations (whether the claims were initially denied or ultimately approved on appeal), it reviewed the claimants' files and considered whether the procedures were medically necessary.

So does evidence related to other claims that were denied. Aetna points to the individual claim files, arguing that they show individualized reviews of the requests for coverage. *See* MSJ Oppo. at 7:9-24. In some circumstances, it contends, the files show "no functional impairment" or described the requested procedure "in terms that were primarily cosmetic." *See id*. at 7:14-8:8 (citing Claims 1C, 4C, 5C, 7C, 8C, 11C, 14C, 18C, 19C, 12F, found at McDonough Decl., Ex. T). In others, Aetna argues, it offered peer-to-peer consultations or requested additional information "to explain the diagnosis or the need for surgery," which was often not provided. *See id*. at 8:9-24 (citing Claims 4C, 7C, 18C, 21C, and 12F).

In Claim 1C, for example, the internal files state "NO DYSFUNCTION NOTED" and that "coverage for the requested service . . . is denied because medical necessity criteria were not met based upon CPB 211/31." *See* McDonough Decl., Ex. T at 2749. Similarly, the notes for Claim 7C state that the claim was denied because "CPB's consider[] procedure code cosmetic. No photos submitted. CPB silent on tx for lipedema. No documentation of functional impairment nor

that procedure will change or improve any functional impairment." *Id*. at 3881.  The notes also

indicate that four peer-to-peer consultations were attempted, but with no response.  *See id*. at 3880.

And the notes from Claim 4C state that the request was denied because "[g]iven that there are no

dx criteria it is unclear that the plan criteria are met vs cosmetic." *Id*. at 3396.  They further state

that it "[w]ould be helpful to have greater understanding of mechanical difficulties that can be

ascribed to a disease vs obesity." *Id*.

Taken together, this evidence—of Kazda's claim for liposuction to treat her lipedema, of

approved claims for liposuction, and of denied claims—shows a dispute of material fact, namely,

whether Aetna made individual determinations about whether the requested procedures were

cosmetic or medically necessary, or categorically denied the claims as cosmetic.

Kazda repeatedly refers to my initial finding at class certification that "Aetna's rationale

for denying class member claims derived from its then-existing written coverage guidelines, CPB

0031 and CPB 0211, which stated that liposuction (i.e., suction lipectomy) is always cosmetic and

therefore not covered." *See* MSJ at 10:23-27; *see also* MSJ Reply at 2:10-14.  She notes that

Aetna relies on the same evidence now as it did then, "but without acknowledging the court's

findings or offering a basis to depart from them," and asserts that "Aetna's arguments fail for the

same reasons they failed on class certification." *See* MSJ Reply at 2:10-28.  It is worth reminding

Kazda that the focus of the class certification inquiry differs from that at summary judgment.

Although the class certification analysis may "entail some overlap with the merits of the plaintiff's

underlying claim," at that point "[m]erits questions may be considered to the extent—but only to

the extent—that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied." *See* Class Cert. Order at 6:18-23 (citing *Dukes*, 564 U.S. at 351;

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).  I made this clear in my

order, writing that

> Kazda has sufficiently shown, *at least for the purposes of class certification*, that
> Aetna considered suction lipectomy a cosmetic procedure and denied class
> members' claims on those grounds. . . . Whether Aetna in fact had such a policy or
> practice is a common question that, answered one way or another, will drive the
> resolution of the litigation.

1    *See id.* at 11:24-12:2.

2         That remains the key question.  Aetna has offered evidence showing a dispute of this

3    dispositive material fact.  Kazda's request for summary judgment of her denial of benefits claim is

4    DENIED.

5         **B.  Breach of Fiduciary Duty**

6         There is also a dispute of material fact regarding Kazda's breach of fiduciary duty claim.

7    She contends that the evidence shows that Aetna breached its duty in three ways: (1) by

8    prioritizing "its own financial interests above the medical needs of plaintiff and the class"; (2) by

9    relying on the CPBs that contradicted with the plan terms, because the primary purpose of

10   liposuction to treat lipedema "is to treat the serious symptoms associated with the disease of

11   lipedema, not to improve appearance"; and (3) by making "no attempt to square its coverage

12   position with the prevailing medical evidence" showing that this surgery "effectively treats the

13   symptoms associated with lipedema."  MSJ at 19:1-26.

14        Aetna does not expressly address all of these arguments in its opposition, making a blanket

15   assertion that Kazda has not shown that Aetna "breached any duty, fiduciary or otherwise."  *See*

16   MSJ Oppo. at 19:3-9, 21:11-13.  But the arguments it does make, and the evidence it proffers in

17   support, refutes Kazda's claim.

18        Concerning the evidence about Aetna's financial interests, Kazda points to emails that she

19   contends "confirm that Aetna knew lipedema surgery was an appropriate treatment for lipedema in

20   certain circumstances long before it formally revised its CPBs" in May 2020, but that it

21   "maintain[ed] its admittedly erroneous policy for financial reasons."  MSJ at 5:12-19.  She relies

22   on a May 13, 2016 email from McDonough, responding to a question about whether lipedema was

23   covered under a current CPB.  *See id.* (citing in part Ex. 11 at 271).  McDonough wrote, "Most of

24   the time lipedema is not symptomatic.  By adding coverage statement to allow coverage, I am after

25   we would open us up to a lot of cosmetic surgery being labeled as treatment for lipedema."  MSJ,

26   Ex. 11 at 271.  But Kazda omits the next sentence: "If there is a rare situation where the lipedema

27   is in a position that it is causing symptoms, and it does not respond to compression, then you may

28   make an individual case exception."  *Id.*  This indicates that Aetna was open to covering claims for

United States District Court
Northern District of California

lipedema in certain circumstances in 2016.

The same appears to be true in 2014, when McDonough responded to another question about whether Aetna had covered suction lipectomy for lipedema. *See* Ex. 57 at 641-42. McDonough wrote: "I would provide coverage if they can prove that the lipedema is causing a functional complaint, i.e., that the sole purpose of liposuction is not merely cosmetic." *Id*. at 642. Kazda's own evidence undercuts her point.

Aetna offers other evidence that creates a dispute of material fact. First, it notes that Kazda's plan was self-insured, meaning it "had no financial stake in the funding of benefits." *See* MSJ Oppo. at 21:16-21. It then points to deposition testimony from McDonough, who stated that Aetna medical directors are trained and considered not to consider costs in determining benefits coverage, and that Aetna's Medical Economics Unit—which analyzes the costs of policy changes—never performed such an analysis on lipedema. *See id*. at 21:22-22:13 (citing Dhadialla Decl., Ex. A ("McDonough Depo.") at 22-27, 326-27). McDonough testified that if the "clinical judgment that a publication of policy is not likely to have a material financial impact on Aetna, such as a rare condition, we may choose not to recommend they do a cost analysis," and that to his knowledge, "no cost analysis has been done on lipedema." *See* McDonough Depo. at 26:13-27:6. Aetna also points to meeting minutes from "CPB Finance Committee" meetings when revisions to CPB 0211 involving liposuction for lipedema were considered in November 2019, March 2020, and July 2020. *See* MSJ Oppo. at 22:8-13 (citing Bender Decl., Exs. 24-26). Each time, the committee rated the revision an "A," meaning "policy released; no financial impact." *See* Bender Decl., Ex. 24 at 4309, 4312; Ex. 25 at 4336-37; Ex. 26 at 4295, 4303. This evidence creates a dispute of material fact concerning Kazda's assertion that Aetna was motivated by financial reasons in its consideration of the relevant CPBs.

Kazda's second argument, that Aetna breached its fiduciary duty because "classification of lipedema surgery as 'cosmetic' conflicts with the plain language of the plan" since its primary purpose "is to treat serious symptoms associated with the disease of lipedema, not to improve appearance," is undermined by the same evidence that Aetna proffered against her denial of benefits claim. *See* MSJ at 19:12-19. As I have explained, there is a dispute of material fact

United States District Court
Northern District of California

1   whether Aetna always considered liposuction for lipedema cosmetic under the relevant CPBs or

2   whether it reviewed individual claims to determine whether the surgery was medically necessary.

3         Finally, there is a dispute of material fact over whether Aetna violated ERISA's duty of

4   care by, as Kazda asserts, making "no attempt to square its coverage position with the prevailing

5   medical evidence." *See id*. at 19:19-26.  In addition to the emails from McDonough, which Kazda

6   contends "confirm that Aetna knew lipedema surgery was an appropriate treatment for lipedema in

7   certain circumstances long before it formally revised its CPBs," she points to his deposition,

8   where he confirmed that as of October 2014, he was "of the opinion that liposuction was an

9   appropriate treatment for lipedema if it was resolving a functional issue." *Id*. at 5:7-14 (citing in

10   part Ex. 4 at 152:23-153:2).  She also points to nine studies that were mentioned in the amended

11   version of CPB 0031 that was published in March 2019, which she asserts support "the conclusion

12   that lipedema causes serious functional problems, including persistent pain, immobility, and

13   psychological strain, and that liposuction is the only proven method for treating the disease and its

14   symptoms." *Id*. at 4:13-5:1.  Kazda notes that these studies dated back to 2011 and "[n]ot a single

15   countervailing study is identified or discussed." *Id*.

16         Aetna frames the issue as one of medical uncertainty.  It contends that lipedema is a "rare

17   or not fully understood" condition and that using liposuction as treatment for lipedema was an

18   adaptation of the procedure for new use.  *See* MSJ Oppo. at 5:2-10.  McDonough testified to this

19   in his deposition, stating that Aetna considered the rarity of cases and its ability to "create

20   appropriate criteria around the particular intervention" in making policy decisions.  *See*

21   McDonough Decl. at 52:23-54:6.  More specifically, McDonough said that when considering

22   whether to provide criteria regarding liposuction for lipedema in early 2016, Aetna was seeing

23   "onesy-twosy cases" making it "very difficult to even come up with criteria." *Id*. at 119:21-120:5.

24   He further stated that "it would be inappropriate to identify criteria if they are not met" and "don't

25   have a good basis in science and literature and consensus in guidelines." *See id*. at 120:5-9.  He

26   also confirmed that when the policy council rejected the recommended revision, it "wanted to

27   have more precise criteria" on how to distinguish liposuction for treatment of lipedema instead of

28   obesity, and that although there was literature regarding lipedema at the time, there was not

United States District Court
Northern District of California

1    "sufficient data and consensus" on how to diagnose it or identify a functional need for liposuction.

2    *See id.* at 299:3-300:2.  This evidence creates a dispute of material fact over Aetna's knowledge

3    not only about lipedema itself, but the use of liposuction in treating the disease and attempts to

4    develop appropriate relevant criteria.

5           Taken together, Aetna has proffered evidence that creates a dispute of material facts

6    regarding Kazda's breach of fiduciary duties claim.  Summary judgment is DENIED.

7    **III. MOTIONS TO SEAL**

8           Both parties filed motions to seal in connection with the motion for summary judgment.

9    Kazda filed a motion to seal in connection with her motion, and Aetna filed a motion to seal in

10   connection with its Opposition.  *See* Dkt. Nos. 121, 125,

11          A party seeking to seal court records must overcome a strong presumption in favor of the

12   public's right to access those records.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d

13   1092, 1096 (9th Cir. 2016).  Under Ninth Circuit law, a party must demonstrate "compelling

14   reasons" to seal motion-related filings where "the motion at issue is more than tangentially related

15   to the underlying cause of action." *Id.* at 1096-99.

16          What constitutes a compelling reason is "left to the sound discretion of the trial court." *Ctr.*

17   *for Auto Safety*, 809 F.3d at 1097 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599

18   (1978)).  The Ninth Circuit has given examples, such as "when a court record might be used to

19   gratify private spite or promote public scandal, to circulate libelous statements, or as sources of

20   business information that might harm a litigant's competitive standing." *Id.*  Under this district's

21   Local Rules, sealing requests must also be narrowly tailored to seek sealing only of sealable

22   material.  See Civ. L.R. 79-5(c).  "Reference to a stipulation or protective order that allows a party

23   to designate certain documents as confidential is not sufficient to establish that a document, or

24   portions thereof, are sealable." *Id.*

25          **A.    Kazda's Motion to Seal**

26          I already sealed most of the exhibits for which Kazda seeks a sealing order as part of my

27   Order granting class certification.  *See* Class Cert. Order at 17-18.  Kazda has submitted these

28   exhibits once again with her motion for summary judgment, numbered differently.  *See* Kazda's

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Mot. to Seal [Dkt. No. 121].  Her request to seal Exhibits 13, 14, 15, 17, 21, 51, 52, 54, and 56

2  (filed with the motion for summary judgment) is GRANTED.  Kazda's remaining requests to seal

3  Ex. 57, which Aetna has designated to be confidential, *see* Stip. Protective Order [Dkt. No. 40],

4  and Ex. 4, which discusses the contents of Ex. 57, are also GRANTED.

5  **B.     Aetna's Motion to Seal**

6  Aetna requests that I seal portions of the Opposition to MSJ and supporting documents that

7  contain: (1) Kazda's private health information ("PHI"); (2) the PHI of non-parties, and (3)

8  Aetna's "confidential and competitive business information."  Def.'s Mot. to Seal [Dkt. No. 125]

9  at 1:7-9.

10  **1.     Public Health Information**

11  Aetna requests that I seal Aetna's Opposition to MSJ at 3:22-23 and 11:13-20.  This

12  request is GRANTED.  These exhibits contain Kazda's PHI, which courts in this district recognize

13  as meeting the compelling reasons standard. S*ee Icon-IP Pty Ltd. v. Specialized Bicycle*

14  *Components, Inc*., No. 12-CV-03844-JST, 2015 WL 984121, at *6 (N.D. Cal. March 24, 2015)

15  (sealing exhibits "because they relate to personal health issues"); *see also Ortiz v. City & Cty. of*

16  *San Francisco*, No. 18-CV-07727-HSG, 2020 WL 2793615, at *9 (N.D. Cal. May 29, 2020)

17  ("The court agrees that health records properly meet the compelling reasons standard.").

18  Aetna also requests that I seal its Opposition to MSJ at 7:15-8:8, and 8:18-24.  This request

19  is also GRANTED.  These portions of the Opposition contain PHI about third parties, which

20  would cause a serious invasion of privacy.  *See Icon-IP Pty Ltd.*, 2015 WL 984121, at *6 (finding

21  that there were compelling reasons to seal exhibits relating to personal health issues "because

22  disclosure would cause a serious invasion of the privacy of a third party.").  Although the names

23  of the third parties are redacted, the files contain detailed information about their medical issues,

24  treatment, and the timeline for which they sought coverage that could allow for their identification.

25  **2.     Confidential and Competitive Business Information**

26  Aetna additionally requests that I seal other portions of its Opposition, of Dkt. No. 125-4

27  ("Bender Declaration"), and of Dkt. No. 125-3 ("McDonough Dep. Transcript") because it

28  contends that those documents contain Aetna's confidential and competitive business information.

United States District Court
Northern District of California

1    First, it requests that I seal its Opposition to MSJ at 4:12-17 and 15:26-61:1.  This request

2  is GRANTED.  These lines in question describe a masters service agreement between Aetna and a

3  customer.  Disclosure of such an agreement could harm Aetna by providing other customers with

4  access to the specific terms of this particular agreement.  Aetna also requests that I seal its

5  Opposition to MSJ at 6:25- 27.  This request is GRANTED.  Aetna has satisfactorily shown that

6  these lines contain non-public information about Aetna's business practices that, if disclosed,

7  could prejudice or harm Aetna by providing its competitors with information about Aetna's

8  specific claim-handling policies.  *See Google Inc. v. Eolas Tech. Inc*., No. 15-CV-05446- JST,

9  2016 WL 9243337, at *2 (N.D. Cal. March 22, 2016) (sealing information about "non-public

10  business practices, including internal organizational and operational details.").

11    Second, it requests that I seal several portions of the declaration of Shelley Bender,

12  specifically several sections that describe Aetna's agreements with its members, whose names are

13  redacted.  *See* Decl. of Shelley Bender ("Bender Decl.")  [Dkt. No 125-4].  It requests that I seal

14  the following lines: 1:17-21, 1:25-2:3, and 8:21-26 (excerpts from plan document between Aetna

15  and a member); 2:7-13, 2:27-3:6, 5:21-28, 6:4-6, 6:16-22, 7:17-24, and 7:27-8:8 (explaining

16  Aetna's fiduciary duty to its member); 2:17-23 (explaining claims and internal appeals process);

17  3:10-14 (same); 3:17-24,  3:27-4:5, 4:8-17, 4:21-28, 5:4-9, 5:13-18, 6:26-7:4, 7:8-14, 8:11-18, and

18  9:1-6 (explaining Aetna's authority with regard to claim determinations); 6:10-13 (explaining the

19  effect of an appeal).  It also requests that I seal Exhibits 1-26 to the Bender Declaration, and the

20  McDonough deposition transcript at 103:6-20 (discussing the contents of meeting minutes for

21  Aetna's policy council).  These requests are GRANTED.  Aetna contends that each of the

22  preceding sections and accompanying exhibits contain information about Aetna's claim processing

23  policies and include non-public, proprietary information that Aetna does not disclose outside the

24  company.  Def.'s Mot. to Seal at 3:17-19 (citing December 14, 2021, declaration of Robert

25  McDonough in Support of Sealing [Dkt. No. 83-1] ¶ 7).  Aetna has satisfactorily shown that these

26  sections also contain non-public information that, if disclosed, could prejudice or harm Aetna by

27  providing its competitors with information about its specific claim-handling policies.  *See Eolas*

28  *Tech. Inc*., 2016 WL 9243337, at *2 (sealing information about "non-public business practices,

including internal organizational and operational details.").[12]

## CONCLUSION

Aetna's motion to decertify the class is DENIED.  Kazda's motion for summary

judgment is also DENIED.

**IT IS SO ORDERED.**

Dated: November 6, 2023



William H. Orrick
United States District Judge

United States District Court
Northern District of California

---

[12] To the extent I referenced any of the sealed documents in this Order, it was necessary to explain the analysis.  I did so in a manner that avoided disclosing personal health or proprietary business information.