1   ROBERT S. GIANELLI, #82116
    JOSHUA S. DAVIS, #193187
2   ADRIAN J. BARRIO, #219266
    GIANELLI & MORRIS, A Law Corporation
3   12121 Wilshire Boulevard, Suite 505
    Los Angeles, California 90025
4   Tel: (213) 489-1600; Fax: (213) 489-1611
    rob.gianelli@gmlawyers.com
5   joshua.davis@gmlawyers.com
    adrian.barrio@gmlawyers.com
6
    Attorneys for Plaintiff
7   MICHALA KAZDA,
    on behalf of herself and all others
8   similarly situated

9

10

11                  UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

13

14   MICHALA KAZDA, on behalf of herself and )   Case No.: 3:19-cv-02512 WHO
     all others similarly situated,          )   Assigned to Hon. William H. Orrick, D2
15                                           )
                    Plaintiff,               )   **PLAINTIFF'S NOTICE OF MOTION AND**
16                                           )   **MOTION FOR PRELIMINARY APPROVAL**
            v.                               )   **OF CLASS ACTION SETTLEMENT;**
17                                           )   **MEMORANDUM OF POINTS AND**
     AETNA LIFE INSURANCE COMPANY,           )   **AUTHORITIES**
18                                           )
                    Defendant.               )   Date:  December 10, 2025
19   _____ )   Time:  2:00 p.m.
                                             )   Courtroom: 2
20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 10, 2025 at 2:00 p.m. in Courtroom 2 of the above-entitled court, Plaintiff Michala Kazda will move the Court for an order preliminarily approving the proposed class action settlement, attached as Exhibit 1 to the Declaration of Joshua S. Davis, submitted herewith, approving issuance of notice to the class, and setting a hearing for final approval of the settlement.

This motion is based on this notice, the attached memorandum of points and authorities, the Declarations of Joshua S. Davis, Chris Longley and Dung Nguyen, MD, the attached Settlement Agreement and exhibits thereto, the Court's files and records in this action, and upon such other matters as may be presented at the hearing.


DATED:  October 30, 2025                         GIANELLI & MORRIS, ALC


By:    /s/ Joshua S. Davis
                                                                        ROBERT S. GIANELLI
                                                                        JOSHUA S. DAVIS
                                                                        ADRIAN J. BARRIO
                                                                        Attorneys for Plaintiff

# TABLE OF CONTENTS

*Pages*

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………  1

I.      INTRODUCTION…………………………………………………………...  1

II.     SUMMARY OF THE LITIGATION…………………………………………  2

    A.      Relevant procedural history…………………………………………  2

    B.      Investigation and extent of discovery completed…………………….....  3

    C.      Mediation and negotiation of the settlement……………………………...  4

III.    THE PROPOSED SETTLEMENT……………………………………………  4

    A.      Relief for class members……………………………………………  4

    B.      Released claims………………………………………………………  6

    C.      Notice………………………………………………………………..  6

    D.      Class definitions……………………………………………………..  7

    E.      Attorney's fees………………………………………………………  7

    F.      Settlement administrator……………………………………………..  7

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
    APPROVAL……………………………………………………………………  7

    A.      Standards for preliminary approval under Rule 23(e)…………………..  7

    B.      Class Counsel and Class Representatives adequately represented the Class  9

    C.      The settlement is the result of arm's-length negotiations between experienced
    counsel…………………………………………………………………..  9

    D.      The Settlement is an excellent result considering the benefits of the Settlement
    and the risks of continued litigation………………………………………  10

    E.      The Settlement treats all Class Members equitably relative to each other….13

    F.      Fee provision and *Bluetooth* factors do not weigh against approval

    G.      Anticipated Claim Rate……………………………………………  13

    H.      The views of experienced counsel.

V.      PROPOSED SCHEDULE………………………………………………16

VI.     CONCLUSION……………………………………………………..16

i

1

**TABLE OF AUTHORITIES**

2

*Pages*

3

*Campbell v. Facebook, Inc.*
       951 F.3d 1106 (9th Cir. 2020)……………………………………………….. ***passim***

4

5

*Class Plaintiffs v. City of Seattle*
       955 F.2d 1268 (9th Cir. 1992)…………………………………………….. 7

6

*Donachie v. Liberty Life Ass. Co. of Boston*
       745 F.3d 41 (2nd Cir. 2014)…………………………………………….. 15

7

8

*Hanley v. Kodak Ret. Income Plan*
       663 F.Supp.2d 216 (W.D.N.Y. 2009)…………………………………… 15

9

*Hanlon v. Chrysler Corp.*
       150 F.3d 1011 (9th Cir. 1998)………………………………………...8, 9, 10

10

11

*In re Bluetooth Headset Products Liability Litigation*
       654 F.3d 935 (9th Cir. 2011)…………………………………………13, 14, 15

12

13

*Kim v. Allison*
       8 F.4th 1170 (9th Cir. 2021)…………………………………………….. 8

14

*Meidl v. Aetna, Inc.*,
       No. 15-cv-1319 (JCH), 2017 WL 1831916 at *20
              (D. Conn. May 4, 2017)…………………………………………… 11

15

16

*Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.*
       911 F.2d 1347 (9th Cir.1990)…………………………………………… 15

17

18

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
       390 U.S. 414 (1968)……………………………………………………...10

19

20

*S.A. McElwaine v. U.S. West, Inc.*
       176 F.3d 1167 (9th Cir. 1999)………………………………………... 15

21

22

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*
       85 F.3d 455 (9th Cir. 1996)……………………………………………11, 12

23

24

*Wit v. United Behavioral Health*
       79 F.4th 1068 (9th Cir. 2023)…………………………………………… 12

25

26

///

27

///

28

///

ii

1

## TABLE OF AUTHORITIES

2

*Pages*

3 ***Statutes***

4 Federal Rules of Civil Procedure

5       Rule 23……………………………………………………………………..***passim***

6 Federal Rules Decisions

7       Advisory Committee Notes to 2018 Amendments
8           Volume 324, Page 905……………………………………………………8

9 The Employee Retirement Income Security Act of 1974 (ERISA)
      29 U.S.C. § 1001, et seq…………………………………………………***passim***
10

United States Code
11
      Title 29, Sec. 1132…………………………………………………..7, 15
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a certified ERISA[1] class action for injunctive and declaratory relief under FRCP 23(b)(1) and (2) regarding the practice of Defendant Aetna life Insurance Company ("Aetna") to deny all tumescent liposuction surgery for the treatment of lipedema ("Lipedema Surgery") as cosmetic. After over six years of vigorous litigation, investigation, and discovery; intense arms-length negotiations and approximately two months before the scheduled trial in this matter, Plaintiff Michala Kazda and Aetna (collectively the "Parties") agreed to settle this class action on the terms set forth in the Settlement Agreement ("the Settlement") attached as Exhibit 1 to the Declaration of Joshua S. Davis ("Davis Decl.").

The Settlement followed major policy changes from Aetna directly resulting from this litigation. A little over a year after this action was first filed, Aetna changed its "cosmetic" coverage position with respect to Lipedema Surgery to provide it is medically necessary if certain criteria are met. Aetna's post-litigation reversal of its coverage position is built into the Settlement. Aetna has agreed not to change its revised coverage position regarding Lipedema Surgery unless such change is warranted by a "good faith" review of "new scientific evidence."

In addition, Aetna will reimburse Class Members who paid out-of-pocket for Lipedema Surgery following Aetna's denial. Class Members who are covered under an Aetna Plan and have not yet had Lipedema Surgery can submit new coverage requests for Lipedema Surgery pursuant to the terms of their current Aetna Plan and Aetna's revised Lipedema Surgery coverage criteria.

Plaintiff respectfully requests that the Court preliminarily approve the Settlement. At the preliminary approval stage, the Court makes only a preliminary determination of the Settlement's fairness, reasonableness, and adequacy so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination about the Settlement's fairness.

The proposed Settlement easily meets this standard. It is the product of extensive, arm's-length negotiations between the parties, was assisted by an experienced, well-respected mediator, and will fairly resolve this case. Indeed, the Settlement provides all the relief requested in the operative

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. (ERISA).

1

First Amended Complaint (FAC) so that a victory at trial would provide no additional benefit for the Class.

Plaintiff therefore respectfully requests that the Court enter the [Proposed] Order Granting Motion for Preliminary Approval of Class Action Settlement, direct issuance of Notice of Proposed Settlement of Class Action and Final Approval Hearing to the identified class members, and set a Final Approval Hearing to consider whether to grant final approval of the Settlement, and the motion by Plaintiff and Class Counsel for an award of attorneys' fees and expenses and an incentive award for the Class Representative.

## II.    SUMMARY OF THE LITIGATION

### A.    Relevant procedural history.

On May 9, 2019, Plaintiff filed a class action Complaint for Recovery of ERISA Plan Benefits; Enforcement and Clarification of Rights; and Breach of Fiduciary Duty seeking benefits, clarification of rights, and breach of fiduciary duty under ERISA against Aetna over its denial of her Lipedema Surgery, on behalf of herself and all others similarly situated. (Dkt. 1.) Aetna relied on two extra-contractual, written coverage directives, entitled Cosmetic Surgery and Procedures (CPB 0031) and Abdominoplasty, Suction Lipectomy and Ventral Hernia Repair (CPB 0211), that erroneously identified all liposuction, except breast reconstruction, as cosmetic, and thus excluded from coverage, without exception. (Dkt. 34, ¶¶ 17-24.) Aetna applied CPB 0031 and CPB 0211 to deny Lipedema Surgery requests on a categorical basis. (*Id*.) Plaintiff filed a FAC on September 26, 2019. (Dkt. 34.)

Effective August 28, 2020—a little over a year after this lawsuit was filed—Aetna published a new and revised version of its CPB 0211, to now provide that Aetna considers Lipedema Surgery medically necessary when certain criteria are met. (Davis Decl., ¶ 11; *See also* Exhibit D to Settlement.)

On December 7, 2021, Plaintiff filed a motion for class certification. (Dkt. 88.) On April 26, 2022, the Court granted the motion and certified the following class: "All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Aetna and whose claims for liposuction treatment of their lipedema were denied as cosmetic." (Dkt. 99 at p. 20.) The Court also appointed Michala Kazda as Class Representative and Gianelli & Morris as Class Counsel. (*Id*.)

2

On June 25, 2021, Aetna filed a Rule 23(f) petition with the Ninth Circuit, requesting permission to appeal the Court's order granting class certification. (*Kazda v. Aetna*, Dkt. 1 and 2, Ninth Circuit Case No. 22-80055). On October 15, 2021, the Ninth Circuit denied Aetna's Rule 23(f) petition. (*Kazda v. Aetna*, Dkt. 3, Ninth Circuit Case No. 22-80055).

On January 25, 2023, Plaintiff filed a motion for summary judgment. (Dkt. 120.)

On March 24, 2023, Aetna filed a motion to decertify the class. (Dkt. 133.)

On November 6, 2023, the Court denied Plaintiff's motion for summary judgment and Aetna's motion to decertify the class. (Dkt. 156.)

On June 11, 2025, the Parties filed a Joint Notice of Settlement in Principle with the Court. (Dkt. 174.)

### B.    Investigation and extent of discovery completed.

The Parties' settlement occurred a mere two months before trial and was well informed by the extensive discovery and investigation completed up to that point. At the time of Settlement, Aetna had produced nearly 4,600 pages of information concerning class and merit issues. (Davis Decl., ¶ 21.) For her part, Plaintiff produced 600 pages of information supportive of her position that Aetna's policies and practices were amenable to class treatment and that Lipedema Surgery was not cosmetic, but rather a safe and medically indicated treatment for lipedema. (*Id*.)

Plaintiff served numerous document requests, interrogatories, and requests for admissions. (*Id*., ¶ 22.) In addition, Plaintiff deposed numerous Aetna employees and doctors, and prepared for and defended the depositions of Plaintiff's witnesses. (*Id*.) Plaintiff provided her expert reports on December 20, 2024. (*Id*.)

Class Counsel supplemented formal discovery with their own investigation and research. (Davis Decl.., ¶ 23.) Class Counsel engaged in extensive investigation and research regarding the safety and effectiveness of Lipedema Surgery and retained and extensively worked with experts on Lipedema Surgery and the body of medical literature addressing it. (*Id*.)

In addition, to assist with settlement negotiations, on June 12, 2024, the Parties requested permission from the Court to contact absent Class Members to find out their current lipedema condition, including whether they had paid out-of-pocket for Lipedema Surgery following Aetna's

denial, and if so, when the surgery or surgeries took place, and their estimated out-of-pocket costs. (Dkt. 165.) The Court entered an Order granting the request on June 13, 2024. (Dkt. 166). Following the Order, on or about July 1, 2024, Class Counsel sent a letter to the last known address of all Class Members asking them to contact Class Counsel about their situation. (Davis Decl., ¶ 24.)  Class Counsel further reached out to the Class Members through telephone and email, to the extent that information could be obtained. (*Id*.)

Through the above process, Class Counsel were able to contact 21 of the 25 Class Members. (Davis Decl., ¶ 25.) Class Counsel learned that 12 of these Class Members had paid out-of-pocket for Lipedema Surgery prior to September 2022, in the total estimated amount of $423,771.00. (*Id*., ¶ 20.) None reported any Lipedema Surgeries after that date. (*Id*.) Two of these Class Members reported they had already received some reimbursement separate from this lawsuit for their surgeries. (*Id*.)

**C.    Mediation and negotiation of the settlement.**

The Parties participated in a mediation in this matter before Edwin Oster, Esq., an experienced and well-respected private mediator with Judicate West, on August 30, 2022. (Davis Decl., ¶ 26.) The Parties also participated in a mandatory settlement conference before Magistrate Judge Alex G. Tse on February 8, 2023. (Dkt. 124.)

The Parties conducted further arm's-length negotiations after obtaining additional information about the Class Members' lipedema status in 2024 and Plaintiff's service of her expert reports. (Davis Decl. ¶ 27.) The Parties finally advised the Court that they reached a settlement in principle on June 11, 2025. (Dkt. 174.) The informed view of experienced class counsel is that the proposed Settlement is fair, reasonable, and adequate and easily meets the criteria for preliminary approval. (Davis Decl., ¶ 23.)

**III.    THE PROPOSED SETTLEMENT**

**A.    Relief for class members.**

The Settlement provides the following relief. First, effective August 28, 2020, Aetna revised its CPB 0211 on Abdominoplasty, Suction Lipectomy and Ventral Hernia Repair to state that Lipedema Surgery is considered medically necessary when certain criteria are met. (Ex. 1 at ¶ 16; *See also* Ex. D to Settlement.) Aetna has agreed not to change its revised coverage position regarding

Lipedema Surgery unless such change is warranted by a "good faith" review of "new scientific evidence." (*Id.*) Plaintiff's expert on Lipedema Surgery, Dr. Dung Nguyen from Stanford University, has reviewed the medical criteria listed in the revised CPB 0211 and confirmed the criteria are reasonable and appropriate. (Nguyen Decl., ¶ 7.)

Class Members who paid out-of-pocket for Lipedema Surgery are entitled to reimbursement under the Settlement. (Ex. 1 at ¶ 17.) To obtain the reimbursement, the Class Member must submit the claim form substantially in the form of Exhibit E to the Settlement attesting that their out-of-pocket payments were not paid or reimbursed by another health plan, documentation sufficient to show the Class Member had a Lipedema Surgery (such as medical records) and proof of payment. (*Id.*) If due to the passage of time, certain medical records are unavailable, the Settlement Administrator will make a good faith decision based on all reasonably available documentation provided by the Class Member. (*Id.*)

Class Member reimbursement claims are subject to an aggregate cap of $650,000.00 ("Aggregate Cap").[2] (*Id.*) Class Counsel has confirmed this cap is more than reasonable. Class Counsel has been able to contact 21 of the 25 Class Members. and learned that their out-of-pocket costs were about $423,771.00. (Davis Decl., ¶ 25.) This still leaves more than $200,000 if the four additional Class Members, who Class Counsel has been unable to contact, respond to the class notice and submit reimbursement requests.

If a Class Member disagrees with a decision to deny in whole or part a reimbursement claim, the Settlement provides a streamlined reconsideration process to resolve the matter. First, Class Counsel will meet and confer with Aetna's Counsel to attempt to resolve the dispute informally. (Ex. 1 at ¶ 20.) If unsuccessful, Class Counsel and Aetna's Counsel will submit the dispute to the Court for final resolution. (*Id.*)

Class Members who are covered under an Aetna Plan and have not yet had Lipedema Surgery can submit new coverage requests for Lipedema Surgery pursuant to the terms of their current Aetna

---

[2]  If, at the completion of the claim process, the total funds payable under all Reimbursement Claims is greater than the Aggregate Cap, then each Class Member payment will be reduced by an equal percentage sufficient to reduce the sum of all Reimbursement Claims to the Aggregate Cap, rounded to the nearest cent. (Ex. 1 at ¶ 17.)

Plan. (Ex. 1 at ¶ 18.) Aetna will review those coverage requests for Lipedema Surgery in accordance with the new CPB 0211. (*Id*.) Any new coverage request that is denied, in whole or in part, will be subject to the appeal or review process in the Class Member's current Aetna Plan, and ERISA law and regulations. (*Id*.)

**B.    Released claims.**

The Settlement's release of claims provision bars the assertion, by any Class Member, of any and all claims against Aetna arising out of the claims for relief asserted in this action, i.e., claims "based on the facts alleged in the Complaint or First Amended Complaint, specifically, by reason of or arising out of Aetna's denial of any request (whether pre-service or post-service) for Lipedema Surgery on the grounds that the procedure is cosmetic, experimental or investigational under ERISA-governed plans, either fully insured or self-insured[.]" (Ex. 1 at ¶ 14, definition (p); *see also*, ¶¶ 21-23.)

The Release does not apply to Class Members who did not have Lipedema Surgery and are no longer Aetna members. (*Id*. at ¶ 14, definition (r) and ¶ 19.) Any claims they may have are tolled from the filing of this lawsuit to the Effective Date of this Agreement. (*Id*. at ¶ 19.)

Released Claims also do not include requests for surgeries that were initially denied by Aetna after it changed its Lipedema Policy on August 1, 2020 or reimbursement requests for earlier denied requests if the surgeries took place after August 1, 2022. (*Id*. at ¶ 14, definition (p).)

**C.    Notice.**

The Parties agree that no later than thirty-five days after entry of the Preliminary Approval Order, a Settlement Administrator will mail notice of the proposed Settlement to all identified class members. (Ex. 1 at ¶ 28.) Aetna will provide to the Settlement Administrator a list of the last known addresses of each Class Member available from its records no later than twenty days after the entry of the Preliminary Approval Order. (*Id*.)

**D.    Class definitions.**

The Settlement expands the class definition to include Class Members whose Lipedema Surgery claims were denied as experimental or investigational. (Ex. 1 at ¶ 14, definition (d).)  The Parties agreed to this expansion because they learned that one Aetna member in an ERISA plan had

her Lipedema Surgery denied as experimental because the medical director handling the claim wrongly applied an Aetna CPB for a different skin disease called Lymphedema. (Davis Decl., ¶ 17.) This change ensures that this Aetna member has an opportunity to participate in this Settlement.

### E.    Attorney's fees.

If the Court preliminarily approves the Settlement, Class Counsel will move for an award of attorney's fees under the lodestar method pursuant to ERISA's fee shifting statute (29 U.S.C. 1132(g)(1)) in an amount not to exceed $675,000.00 and litigation costs in an amount not to exceed $46,162.84. (Ex. 1 at ¶ 24.) This amount includes any fees and costs incurred through Final Approval. (*Id*.) Aetna has agreed not to contest a motion that seeks up to this amount. (*Id*. at ¶ 26.)

This requested fees will not come close to compensating Class Counsel for their time spent on this case, but represent an approximate 45% reduction from Class Counsel's actual lodestar, which is more than $1.25 million. (Davis Decl., ¶ 19.) Any award of attorneys' fees and costs shall be paid separate and apart from the settlement consideration awarded to the Class. (Ex. 1 at 24.)

In addition, Class Counsel will seek Court approval of an incentive award in the amount of $17,000 for Plaintiff Michala Kazda, based on the time and effort she devoted to the Litigation. (*Id*. at ¶ 27.)

### F.    Settlement administrator.

The Parties request that the Court appoint Atticus Administration LLC ("Atticus") as the Settlement Administrator for this Settlement. Atticus' qualifications are set forth in the concurrently filed Declaration of Christopher Longley. Aetna shall pay the costs of the Settlement Administrator separate and apart from the Settlement consideration awarded to the Class. (Exh. 1 at ¶ 34.)

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards for preliminary approval under Rule 23(e).

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2).

Rule 23(e), as amended in 2018, provides that preliminary approval should be granted where the "parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2)."

Rule 23(e)(2), which governs final approval, requires the Court to consider the following questions to determine whether the settlement is fair, reasonable and adequate:

    (A)    Have the Class Representatives and Class Counsel adequately represented the class;

    (B)    Was the proposed settlement negotiated at arm's length;

    (C)    Is the relief provided for the class adequate, taking in account:

        (i)    The costs, risks, and delay of trial and appeal;

        (ii)    The effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims;

        (iii)    The terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)    Any agreement required to be identified under Rule 23(e)(3); and

    (D) Does the proposal treat class members equitably relative to each other.

The advisory committee notes to the Federal Rules provide that the above factors are not exclusive, nor intended to displace any factor previously adopted by the Ninth Circuit. *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 905, 919.)  The Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement, set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) are thus still relevant.  These include:

> "[T]he strength of the plaintiff's case; the risk, expenses, complexity and likely duration of further litigation; the risks of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and stage of proceeding, the experience and views of counsel; the presence of a government participant, and the reaction of class members to the proposed settlement."

*Id.* at 1027, *See also Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021)(holding *Hanlon* factors are still relevant.)

Here, as set forth below, the proposed Settlement satisfies the standard for preliminary approval criteria under Rule 23(e)2), as well as the relevant, non-duplicative *Hanlon* factors.

**B.      Class Counsel and Class Representatives adequately represented the Class.**

Adequacy asks (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of their class." *Hanlon*, 150 F.3d at 1020.

First, this Court already determined that the Class Representative and Class Counsel do not have any conflict of interest with the Class when it certified this case as class action. (See Dkt. 99.)

Moreover, as detailed above, Class Counsel and Class Representative have vigorously litigated this class action. This case was settled nearly six years after the Complaint was filed and two months before the scheduled trial. The facts and issues relating to Lipedema Surgery were fully developed. The parties engaged in extensive discovery regarding Aetna's bases for refusing to cover Lipedema Surgery, engaged in extensive investigation and research regarding the safety and effectiveness of Lipedema Surgery, and retained and extensively worked with experts on Lipedema Surgery and the body of medical literature addressing it. (Davis Decl., ¶ 21.) Class Counsel also extensively prepared for and took the depositions of numerous Aetna employees and medical directors, and prepared for and defended the depositions of Plaintiff. (*Id.*, ¶¶ 22-23.) No stone was left unturned in examining the strengths and weaknesses of the case.

The Class Representatives and Class Counsel have more than adequately represented the Class in this litigation.

**C.      The Settlement is the result of arm's-length negotiations between experienced counsel.**

Here as detailed above, the Class is represented by counsel who have extensive class action experience, and have successfully prosecuted many other class actions over policyholder's rights to health benefits, including Lipedema Surgery. (Davis Decl., ¶¶ 3-8.) The Parties attended a mediation and mandatory settlement conference, and continued further negotiations periodically over a nearly three-year period. The negotiations were intense and at arms'-length and resulted in a *better result* for the Class than the reprocessing remedy to which the Class would likely have been limited under ERISA had the case gone to trial. *See* section III.B., *infra*.

Accordingly, the Settlement reached in this matter represents the end-result of an adversarial

process where the interests of the Class were vigorously and fully represented by Class Counsel.

**D.    The Settlement is an excellent result considering the benefits of the Settlement and the risks of continued litigation.**

It is well established that, in assessing the reasonableness of a class action settlement, "the relief provided to the class cannot be assessed in a vacuum" but rather must be weighed against what the class stood to gain from litigating the case to conclusion. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020). *See also*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968) ("Basic to [the] process [of evaluating settlements] ... is the need to compare the terms of the compromise with the likely rewards of litigation."); *Hanlon*, *supra*, 150 F.3d at 1026 (relevant considerations include not only "the amount offered in settlement," but also "the strength of the plaintiffs' case," *i.e.*, what plaintiffs could expect from further litigation).

Moreover, in assessing reasonableness, the Court must keep in mind that "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, *supra*, 150 F.3d at 1027.

This case was brought because Aetna denied all requests for Lipedema Surgery as "cosmetic." Plaintiff Michala Kazda was denied Lipedema Surgery for this reason. This case sought to reverse Aetna's coverage position by showing that Lipedema Surgery is not performed for cosmetic reasons (make a patient look better) but to address functional problems caused by lipedema: pain, mobility problems, joint disorders and other debilitating conditions. (Dkt. 34 at ¶ 53.) Plaintiff sought an injunction requiring Aetna to retract its internal CPBs that erroneously classified tumescent liposuction as a "cosmetic" procedure, provide notice to Class Members who had their Lipedema Surgery denied about the retraction, and to re-review the denied the claims under the proper standard and make payment where appropriate. (*Id.* at ¶ 60.)

The proposed Settlement is reasonable because it effectively provides even more relief than requested. Litigating this matter to conclusion would provide Plaintiff and the Class no further benefit. In fact, it could easily and would likely lead to a worse result for the Class.

To begin with, as a direct result of this litigation, Aetna reversed its "cosmetic" coverage

position with respect to Lipedema Surgery on August 28, 2020. This policy reversal is built into the Settlement. Aetna has agreed not to change its revised coverage position regarding Lipedema Surgery unless such change is warranted by a "good faith" review of "new scientific evidence." (Ex. 1 at ¶ 16.) This by itself represents a sea change in Aetna's coverage position, accomplishing the fundamental purpose of these class-action lawsuits.

Reprocessing is ordinarily the appropriate remedy under ERISA where, as here, a claims administrator has applied a "wrong standard" to a claim for benefits. *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) ("We now make it explicit, that remanded for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination.") When a claim is reprocessed, the claims administration essentially re-reviews the original claim using a correct standard.

The Settlement affords a much better result for the Class than the traditional remedy of reprocessing—a remedy "which, while it may result in payment for certain putative class members, presumably will not result in payment for others." *Meidl v. Aetna, Inc.*, No. 15-cv-1319 (JCH), 2017 WL 1831916 at *20 (D. Conn. May 4, 2017).

First, Aetna will reimburse class members for any out-of-pocket costs they incurred for Lipedema Surgery, without the need to meet any medical necessity criteria in Aetna's CPB 0211, i.e. reprocessing. (Ex. 1 at ¶ 17.) To obtain this relief, Class Members need only provide a simple claim form, along with documentation to show that the Class Member had a Lipedema Surgery, and reasonable proof of payment. (*Id*.)

Class Members who are covered under an Aetna Plan and have not yet had Lipedema Surgery can submit new coverage requests for Lipedema Surgery pursuant to the terms of their current Aetna Plan and the new CPB 0211. (*Id*. at ¶ 18.)

Moreover, as noted above, the Settlement should yield a significant monetary benefit for the Class.

If Plaintiff proceeds to trial, there is a risk that the Class could do worse. Aetna has raised several significant defenses to this lawsuit. For instance, in opposition to Plaintiff's motion for

summary judgment (MSJ) on the denial of benefits claim, Aetna asserted it had no common practice to deny all Lipedema Surgery claims as "cosmetic" but decided them on an individualized basis. (Dkt. 85.) In opposition to the MSJ on the breach of fiduciary duty claim, Aetna argued the science had not yet coalesced around appropriate medical necessity criteria until 2020, and that it denials were due to this lack of knowledge not any financial interest. (Dkt. 126.) The Court ruled against Plaintiff and denied the MSJ, holding that Aetna had submitted sufficient evidence to show disputed issues of material facts on both claims. (Dkt. 156 at 26-30)  If the case proceeds to trial, it can be anticipated that Aetna will re-argue these issues, and the Court could rule in Aetna's favor, in which case the Class would get nothing.

Even if Plaintiff prevails at trial, Aetna will raise all the issues it lost on in the district court on appeal, including class certification and merits. The Ninth Circuit's ruling in *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023), which reversed in part certification of an ERISA class action for denial of healthcare benefits, as well as a judgment in favor of Plaintiffs following a 10-day bench trial, points out the risks to the Class on any appeal.

Finally, even if Plaintiff prevails on appeal, Class Members seeking reimbursement would probably be subject to a reprocessing remedy under which Aetna, as the plan administrator, could deny many of the reimbursement claims for failure to meet medical necessity criteria in its new CPB 0211. *See Saffle*, *supra*, 85 F.3d at 460-461. Aetna cannot do this under the Settlement in this case, under which the Aetna's criteria are not applied to any reimbursement requests.

Given the potential risks of further litigation and that the proposed Settlement provides even more relief than requested in the operative FAC, the Settlement is well within the range of reasonableness.

### E.    The Settlement treats all Class Members equitably relative to each other.

Rule 23(e)(2)(D) requires Courts to evaluate whether the Settlement treats Class Members equitable relative to each other. This Settlement satisfies this requirement.

Here, all Class Members who paid out of pocket for Lipedema Surgery who submit reasonable proof of payment will be reimbursed for their costs. Class Members who are still Aetna members, who have not yet had Lipedema Surgery, can be authorized for future Lipedema Surgery.

While Class Members who have not had the surgery, and are no longer Aetna members, cannot

obtain surgery through Aetna, they do not release any claims.

Additionally, there is no preferential treatment for the Class Representative, who will receive

the same benefit as other Class Members. Plaintiff Michala Kazda will have to submit proof of her

out-of-pocket payments to obtain reimbursement relief.

**F.      Fee provision and *Bluetooth* factors do not weigh against approval.**

The Ninth Circuit identified the following three "subtle signs" of collusion that district courts

should scrutinize when approving class action settlements: (1) "when counsel receive a

disproportionate distribution of the settlement, or when the class receives no monetary distribution,

but class counsel are amply rewarded"; (2) "when parties negotiate a 'clear sailing' arrangement" and

(3) "when the parties arrange for fees not awarded to revert to the defendant rather than be added to

the class fund." *Id.* at 947. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946

(9th Cir. 2011).

In *Campbell, supra*, the Ninth Circuit examined the *Bluetooth* factors in affirming the

settlement of an injunctive relief class action settlement which included a "clear-sailing" fee

provision. As to the first factor, the Ninth Circuit held the fact the class received no monetary

distribution did not weigh against approval of an injunctive relief class settlement. The court

explained that further litigation could not result in any meaningful monetary relief to class members,

and thus was not a sign that class counsel had bargained away something valuable to benefit

themselves. 951 F.3d at 1126. Relatedly, the Ninth Circuit upheld the district court's finding that

class members had received valuable injunctive relief based on its oversight and attendant

understanding of the litigation, which involved protections to class member's privacy rights. *Id*. at

1127.

As to the second factor regarding the "clear-sailing" fee provision, the Ninth Circuit found no

evidence that the class would have received more meaningful injunctive or declaratory relief had the

defendant been permitted to oppose class counsel's fee application. *Campbell, supra*, 951 F.3d at

1127. The Court also found that the fact that fees which could be sought under clear-sailing provision

were a 44% reduction from fees actually incurred under the lodestar analysis weighed against any

collusion. (*Id.* at 1115, 1127.) Finally, as to the third factor, the Ninth Circuit held that reversion concern was inapplicable in an injunctive relief class because it has "no fund into which any fees not awarded by the court could possibly revert." *Id.* at 1127.

Here, the *Bluetooth* factors similarly do not weigh against approval of this excellent class action settlement. The operative FAC sought, and the Court certified injunctive and declaratory relief classes only, pursuant to FRCP 23(b)(1) and (b)(2). (Dkt. 99.) Thus, this litigation could not result in any common-fund distribution to the Class. Accordingly, as explained in *Campbell*, that the Settlement in this injunctive relief class action provides no common fund distribution is not a sign that the Class Counsel bargained away monetary relief to benefit themselves.

Moreover, there is no question that the injunctive relief provided in the Settlement contains significant and substantial value as explained above in Section IV(D), either through direct cash reimbursement for out-of-pocket costs, or authorization for a future surgery. While a specific dollar value cannot be assigned the injunctive relief provided in this Settlement because it is not known who will want Lipedema Surgery in the future, there is no question that receiving insurance coverage for past and future Lipedema Surgery constitutes significant and substantial value, for the Class Members as well as Aetna members who need surgery in the future.

As to the second factor, the Class will not receive more valuable injunctive or declaratory relief if Aetna is permitted to oppose the fee application. As explained above in Section III(D), Plaintiff has obtained through this Settlement all the relief sought in the FAC, and all the relief she could obtain if this class action is successfully litigated to a judgment after a trial and affirmed on appeal.

Moreover, to prevent even the appearance of any collusion, the Parties did not have any discussions regarding attorney fees and costs until after they had agreed upon all the other material terms of the Settlement. In addition, similar to *Campbell*, Class Counsel here has agreed to accept a roughly 45% reduction, which will not come close to fully compensating Class Counsel for their time.

///

///

14

Finally, as to the third factor, as the Ninth Circuit held in *Campbell*, reversion is inapplicable here because there is no common fund into which any fees not awarded by the Court can be placed for distribution.

In sum, the *Bluetooth* factors do not weigh against approval here. The Settlement should be finally approved.[3]

**G.    Anticipated Claim Rate**

Class Counsel anticipates that the reimbursement claim rate will be very high, given the small size of the Class, Class Counsel's previous successful contacts with 21 of the 25 Class Members, and its experience in another Lipedema class action settlement with United Healthcare that involved similar contacts with absent class members.  Class Counsel anticipates that most of the Class Members who paid out of pocket for Lipedema Surgery will submit reimbursement requests. (Davis Decl., ¶ 28.)

**H.    The views of experienced counsel.**

Class Counsel are experienced in cases of this nature having certified and tried cases against health plans over their refusal to provide benefits. (Davis Decl., ¶¶ 3-8.) This included successful class action trial against Kaiser for violating California's reconstructive surgery law, a case that resulted in thousands of Kaiser members gaining access to excess skin surgery entitled *Gallimore v. Kaiser Foundation Health Plan, Inc.*, Alameda Superior Court, Case No. RG12616206. (Davis Decl., ¶ 7.) It is the view of Class Counsel that the Settlement is reasonable, fair, and adequate. (Davis Decl., ¶ 29.) The Settlement should be preliminarily approved.

---

[3] Plaintiff further notes that they are not seeking fees based on a percentage value of the Settlement but ERISA statutory fees pursuant to the fee-shifting statute 29 U.S.C. section 1132(g)(1). ERISA's fee provisions in particular are intended to encourage beneficiaries to enforce their statutory rights, *Donachie v. Liberty Life Ass. Co. of Boston*, 745 F.3d 41, 45-46 (2nd Cir. 2014), and "to encourage attorneys to take on such cases, which are often time consuming and complex," *Hanley v. Kodak Ret. Income Plan*, 663 F.Supp.2d 216, 219 (W.D.N.Y. 2009). The Ninth Circuit has rejected the rule that ERISA fees be proportional to the underlying benefit provided.  *Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.,* 911 F.2d 1347, 1355 (9th Cir.1990) (rejecting a proportionality rule).  ERISA fees must be determined using the lodestar method. *S.A. McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999) (held ERISA fees calculated using the lodestar method).

15

## V.    PROPOSED SCHEDULE

Based on the foregoing, Plaintiff respectfully requests that the Court set the following schedule for the dissemination of the class notice and the setting of the final approval hearing in this case.

| Event | Event Date |
|---|---|
| Aetna provides the notice required under 28 U.S.C. Section 1715. | Within 10 days after Plaintiff files a motion for preliminary approval |
| Aetna provides a list of the last known addresses of each person in the Class available from its records to the Settlement Administrator | 20 days after the date of the Preliminary Approval Order |
| The Administrator mails the notice of the proposed Settlement | 35 days after the date of the Preliminary Approval Order |
| Class Counsel files a motion for an award of attorneys' fees and costs | 35 days after the date of the Preliminary Approval Order |
| Deadline for postmarking of exclusions, objections, and requests to be heard at the Final Approval Hearing | 95 days after the date of the Preliminary Approval Order |
| Class Counsel to file notice specifying those who have objected, together with a declaration of the Settlement Administrator | 105 days after the date of the Preliminary Approval Order |
| Class Counsel to file motion for final approval | 28 days prior to the Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, at least 132 days after the date of the Preliminary Approval Order |

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the proposed Settlement; direct that notice be sent to class members; and set a Final Approval Hearing.

DATED:  October 30, 2025                    GIANELLI & MORRIS


                                   By:    /s/ Joshua S. Davis
                                          ROBERT S. GIANELLI
                                          JOSHUA S. DAVIS
                                          ADRIAN J. BARRIO
                                          Attorneys for Plaintiff
                                          MICHALA KAZDA